PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellant,*

v.

FREDERICK L. ENGLE,

        *Defendant-Appellee.*

No. 08-4497

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Senior District Judge.
(3:04-cr-00055-GCM-DCK-1)

Argued: September 23, 2009

Decided: January 13, 2010

Before TRAXLER, Chief Judge, WILKINSON, Circuit
Judge, and Margaret B. SEYMOUR, United States District
Judge for the District of South Carolina,
sitting by designation.

---

Vacated and remanded by published opinion. Chief Judge
Traxler wrote the opinion, in which Judge Wilkinson and
Judge Seymour joined.

---

## COUNSEL

**ARGUED**: Matthew Theodore Martens, OFFICE OF THE
UNITED STATES ATTORNEY, Charlotte, North Carolina,

for Appellant. James Frank Wyatt, III, WYATT & BLAKE, LLP, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellant. Robert A. Blake, Jr., WYATT & BLAKE, LLP, Charlotte, North Carolina, for Appellee.

---

## OPINION

TRAXLER, Chief Judge:

Frederick Engle pleaded guilty to tax evasion, *see* 26 U.S.C.A. § 7201 (West 2002), and the district court sentenced him to four years' probation, conditioned on the service of eighteen months' home detention with work release and international travel privileges. The government appeals, challenging the reasonableness of the sentence. For the reasons set forth below, we vacate the sentence and remand for re-sentencing.

### I.

The information presented during the proceedings below and set out in the presentence report establish that Engle, who was 64 years old when he pleaded guilty, had worked as a manufacturing representative in the shoe industry for more than 30 years. His business required frequent and extensive overseas travel every year.

The criminal information charged Engle with tax evasion for the 1998 tax year only, although the information alleged that Engle had evaded taxes for sixteen years between 1984 and 2002 and owed taxes of more than $600,000. With interest and penalties included, Engle's total tax liability exceeded $2 million. Engle's actions to avoid taxes included providing false information to the Internal Revenue Service, placing assets in others' names, and funneling income through shell corporations that he controlled.

Engle pleaded guilty to the information in 2004 and proceeded to sentencing almost two years later, in February 2006. Based on a total offense level of 17 and a category II criminal history, the presentence report calculated Engle's advisory sentencing range as 27-33 months. The district court concluded that Engle's criminal history was overstated and therefore reduced Engle's criminal history to category I, yielding an advisory sentencing range of 24-30 months.

The government sought a term of imprisonment within the advisory range. The government noted that it prosecutes relatively few tax evasion cases and generally does so only "under the most egregious circumstances." J.A. 31. The government argued that Engle had avoided his tax obligations for sixteen years and that a period of incarceration was necessary to provide adequate deterrence to others. The district court, however, was primarily concerned with making Engle pay his tax debt. *See* J.A. 31c ("Right now I've got this guy and I can try to figure out a way to get the money out of him."). The court concluded that Engle's ability to earn significant amounts of money warranted a variance sentence:

> I'm satisfied that a variance is appropriate under the circumstances for the reason that I believe that I can craft a sentence that addresses both the need to deprive this defendant of his physical liberty for a significant period of time . . . and leave him free to attempt to generate the income that would permit him to settle up with the Internal Revenue Service.
>
> I'm sympathetic to the government's position. Absent . . . the apparent ability to generate the income, I would simply impose a Guideline sentence and be done with it.

J.A. 31e. The court sentenced Engle to four years' probation, conditioned on confinement for eighteen months in a community corrections center. The court directed that Engle, while in

the community corrections center, would be permitted to travel to China as required by his job.

Shortly after the district court announced the sentence, the court learned that the Bureau of Prisons would not permit international travel while Engle was housed in a community corrections center. The district court therefore vacated the sentence and indicated that Engle would be resentenced at a later date.

The district court finally reconvened the sentencing proceeding in March 2008, more than two years after the original sentencing proceeding. At the hearing, the district court asked whether Engle had yet paid any of the taxes owed. Counsel for Engle stated that he had $25,000 in his trust account available for immediate payment and that Engle would be receiving $100,000 in commissions in the next month or two that could be applied to the taxes owed. The government, however, pointed out that in the four years since pleading guilty and the two years since the first sentencing proceeding, Engle had paid only $480 on the taxes owed, and that payment was made only two weeks earlier, after Engle was contacted by the IRS. The government again argued that a sentence of imprisonment within the range suggested by the Guidelines was appropriate, given Engle's conduct. Defense counsel argued that Engle's tax problems were not the result of an extravagant lifestyle, but instead were simply "money management" problems, J.A. 61, spurred on by the costs of three divorces and the need to put his children through college and support his current wife and her children. Counsel for Engle noted that since the first sentencing proceeding Engle had repaid a $500,000 advance owed to his employer and now had $125,000 available to repay the government. Counsel argued that Engle had "done the best he can under the circumstances" and that he now had the ability "to repay every cent the government is owed in terms of this criminal case, as well as any civil proceedings that may ensue." J.A. 60.

The district court asked the government whether it wanted "blood or money," J.A. 60, and the government again stated that it wanted a sentence within the range set by the Guidelines. The court believed the government was thus asking for "[b]lood[,] [b]ecause if I take away his income, you're not going to get" the money. J.A. 60. The court ultimately decided that a sentence similar to the one previously imposed would be appropriate. The court explained its reasoning:

> In considering the nature and circumstances of the offense and the history and characteristics of the defendant, I [agree that this is] more of a money management issue than anything else, [and] the issue that I face as judge in trying to deal with this is to try to apply these factors in a way that appropriately punishes Mr. Engle but does not destroy his ability to pay that money.
>
> I find that a very difficult proposition because I think that there is a need to reflect the seriousness of the offense. I'm concerned that I'm not hearing any effort to try to balance this out other than let's put him in jail and take away his livelihood, which will destroy the ability of the government to collect the money. I don't see how that necessarily promotes respect for the law.
>
> Anything at all that happens to make him pay money affords some deterrence to criminal conduct. I don't see any need to protect the public from further crimes of the defendant. He has no need for vocational training or other correctional treatment unless, of course, I were to order him incarcerated, in which case he would need the vocational training.
>
> * * *
>
> It . . . seems to me to be appropriate to come up with a variance that would reflect this man's ability

> to pay this money. And I think that considering all
> of that — I don't see any unwarranted sentencing
> disparities. Look at the *Gall* case. This isn't a partic-
> ularly terrible . . . variance. It seems to be, then, that
> the sentence I originally thought about[, w]hich was
> fours years probation, 18 months house arrest on
> electronic monitoring with work release, and he will
> be permitted to make trips to China as demanded by
> his employer.

J.A. 63-64. The district court directed that the $25,000 held by Engle's attorney be paid to the IRS immediately and that Engle pay the $100,000 in expected commissions within 90 days. The district court, however, declined to order full resti-tution, believing that the IRS "has adequate means to do that." J.A. 65.

The government appeals the sentence imposed by the dis-trict court. According to the government, the district court's probationary sentence is inconsistent with the policy consider-ations underlying prosecutions for income tax evasion, and Engle's substantial earning potential was not a sufficient rea-son to decline to impose a sentence of imprisonment as rec-ommended by the Guidelines.

## II.

Since the Supreme Court's decision in *Booker*, the Sentenc-ing Guidelines are no longer mandatory but are instead "effec-tively advisory." *United States v. Booker*, 543 U.S. 220, 245 (2005). When sentencing criminal defendants in the post-*Booker* world, district courts must first correctly calculate the defendant's sentence under the Sentencing Guidelines. The court must then allow the parties to argue for what they believe to be an appropriate sentence and consider those argu-ments in light of the factors set forth in 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2009). *See Gall v. United States*, 552 U.S. 38, 49-50 (2007); *United States v. Abu Ali*, 528 F.3d 210,

260 (4th Cir. 2008). Sentencing courts are statutorily required to state their reasons for imposing sentence. *See* 18 U.S.C.A. § 3553(c) (West Supp. 2009). Although a comprehensive, detailed opinion is not necessarily required, the court's explanation must nonetheless be sufficient "to satisfy the appellate court that [the district court] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007); *see also Gall*, 552 U.S. at 50 ("After settling on the appropriate sentence, [the district court] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."). District courts have "sizeable discretion" when sentencing, *Abu Ali*, 528 F.3d at 266, and appellate review is limited to determining whether the sentence imposed is reasonable, *see Gall*, 552 U.S. at 40-41.

An appellate court's reasonableness review has procedural and substantive components. The procedural component requires us to ensure that the district court

> committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range.

*Id.* at 51. The substantive component of reasonableness review requires us to "take into account the totality of the circumstances." *Id.* While we may consider the extent of any variance from the advisory Guidelines range, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* Given the institutional advantages of district courts with regard to sentencing matters, *see United States v. Evans*,

526 F.3d 155, 166 (4th Cir.), *cert. denied*, 129 S. Ct. 476 (2008), all sentences, including sentences "significantly outside the Guidelines range," must be reviewed "under a deferential abuse-of-discretion standard." *Gall*, 552 U.S. at 41.

In challenging the sentence imposed by the district court, the government advances several interrelated arguments. The government contends that the district court failed to properly consider all of the factors set forth in 18 U.S.C.A. § 3553(a). According to the government, the district court failed to properly consider the seriousness of Engle's conduct and the need for deterrence, but at the same time placed too much emphasis on restitution and Engle's financial ability to pay restitution. The government argues that the court's emphasis on restitution is inconsistent with the policy considerations underlying the Guidelines' sentencing recommendations for tax crimes and that granting lenience to defendants with the financial ability to satisfy large restitution awards amounts to bad public policy. The government also argues that, given the dispositive weight that the district court assigned to the need for restitution, the court's refusal to order restitution renders the sentence unreasonable.

## A.

We begin with the government's claim that the court failed to properly consider all of the § 3553(a) factors. Specifically, the government argues that the district court failed to consider or failed to properly consider the seriousness of the offense, *see* 18 U.S.C.A. § 3553(a)(2)(A); the need for the sentence to provide sufficient deterrence, *see id.* § 3553(a)(2)(B); the policy statements issued by the Sentencing Commission, *see id.* § 3553(a)(5); and the need to avoid unwarranted sentence disparities, *see id.* § 3553(a)(6).[1]

---

[1]The government describes its arguments as going to the *substantive* reasonableness of Engle's sentence. In our view, many of the government's arguments — such as its claim that the district court failed to con-

Although the district court mentioned the seriousness of the offense, the court did so only in passing, without any real explanation of how the court believed that factor affected its sentencing decision. *See* J.A. 63 ("I think that there is a need to reflect the seriousness of the offense."). And while the court mentioned disparities, it was only to say that there were no unwarranted disparities. *See* J.A. 64. Since the district court made it clear that defendants without Engle's earning capacity would have been sentenced to prison, something more than a denial of even the existence of disparities would seem to be required. *See United States v. Carter*, 564 F.3d 325, 329 (4th Cir. 2009) ("[T]he district court need not robotically tick through § 3553(a)'s every subsection. But at the same time, a talismanic recitation of the § 3553(a) factors without application to the defendant being sentenced does not demonstrate reasoned decisionmaking or provide an adequate basis for appellate review." (citation and internal quotation marks omitted)).

We need not decide, however, whether the district court's cursory treatment of these factors would in and of itself be enough to require resentencing. Questions about the seriousness of the offense and the possibility of unwarranted sentencing disparities are interrelated with what we believe to be the more important issue in this case—the district court's failure to consider the relevant policy statements issued by the Sentencing Commission.

As the government notes, the policy statements issued by the Sentencing Commission make it clear that the Commission views tax evasion as a serious crime and believes that,

sider all of the § 3553(a) factors — are more properly viewed as challenging the procedural reasonableness of the sentence. *See Gall*, 552 U.S. at 51. We will, of course, consider the government's arguments on their merits, without regard to whether the government attached the correct descriptive label to those arguments.

under the pre-Guidelines practice, too many probationary sentences were imposed for tax crimes. *See* U.S.S.G. Ch. 1, Pt. A, introductory cmt. 4(d) (1998) ("Under pre-guidelines sentencing practice, courts sentenced to probation an inappropriately high percentage of offenders guilty of certain economic crimes, such as theft, tax evasion, antitrust offenses, insider trading, fraud, and embezzlement, that in the Commission's view are 'serious.'"). The policy statements also reflect the Commission's view that general deterrence — that is, deterring those other than the defendant from committing the crime — should be a primary consideration when sentencing in tax cases. As the Commission has explained,

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

U.S.S.G. Ch. 2, Pt. T, introductory cmt. (1998). The policy statements likewise make it clear that the Commission believes that there must be a real risk of actual incarceration for the Guidelines to have a significant deterrent effect in tax evasion cases. The Guidelines therefore

> classify as serious many offenses for which probation was frequently given and provide for at least a short period of imprisonment in such cases. *The Commission concluded that the definite prospect of prison, even though the term may be short, will serve as a significant deterrent*, particularly when com-

> pared with pre-guidelines practice where probation, not prison, was the norm.

*Id.* at Ch. 1, Pt. A, introductory cmt. 4(d) (1998) (emphasis added). Given the nature and number of tax evasion offenses as compared to the relatively infrequent prosecution of those offenses, we believe that the Commission's focus on incarceration as a means of third-party deterrence is wise. The vast majority of such crimes go unpunished, if not undetected. Without a real possibility of imprisonment, there would be little incentive for a wavering would-be evader to choose the straight-and-narrow over the wayward path.

The district court, however, made no mention of these specific policy statements, nor did the court more broadly acknowledge the general principles underlying the Guidelines' approach to sentencing for serious economic crimes like tax evasion. The only statements made by the district court touching on these areas seem to suggest that the district court fundamentally disagreed with the Guidelines' approach in these cases. The court mentioned the seriousness of the offense only to chastise the government for remaining firm in its view that a term of imprisonment was warranted, *see* J.A. 63, and the court seemed to effectively reject *any* need for third-party deterrence with its statement that "[*a*]*nything at all* that happens to make him pay money affords some deterrence to criminal conduct," J.A. 63 (emphasis added).

We recognize that in the post-*Booker* sentencing world, district courts must give due consideration to relevant policy statements, but those policy statements are no more binding than any other part of the Guidelines. Accordingly, district courts may "vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines." *United States v. Kimbrough*, 552 U.S. 85, 101 (2007) (internal quotation marks and alteration omitted). Nonetheless, "when a non-Guidelines sentence runs directly counter to the Commission's position, either because the district court

has erroneously applied the departure provisions or because it has determined in a 'mine-run case' that the Guidelines range fails to reflect the § 3553(a) factors, "'closer review may be in order.'" *Evans*, 526 F.3d at 165 n.4 (quoting *Kimbrough*, 552 U.S. at 109). If "closer review" of a district court's policy disagreement is ever warranted, we believe it would be appropriate in this case. Nonetheless, given the facts of the case and the degree of the variance, we find the record insufficient to permit even the routine review for procedural reasonableness required in cases involving an outside-the-Guidelines sentence. *See Gall*, 552 U.S. at 50 (explaining that if the sentencing judge "decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one."); *cf. Rita*, 551 U.S. at 356-57 ("[W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation.").

This case is a "mine-run" tax-evasion case only in the most generous (to Engle) understanding of that phrase. Engle evaded his tax responsibilities for sixteen years, altered tax returns prepared by his accountants, directed that income to him be paid to shell corporations in an effort to avoid withholding and reporting requirements, and lied to the IRS about the existence of these corporate accounts.[2] Yet, with facts that could perhaps be viewed as warranting an above-Guidelines

---

[2]These facts make it difficult to accept the district court's characterization of the offense and Engle's conduct as merely reflecting "money management" problems. The post-*Booker* level of deference that must be accorded to a district court's sentencing decisions, of course, does not insulate the court's factual findings from appellate review. *See Gall*, 552 U.S. at 51 (explaining that a district court makes a procedural error if it "select[s] a sentence based on clearly erroneous facts"); *see also United States v. Harvey*, 532 F.3d 326, 336-37 (4th Cir. 2008) ("In assessing whether a sentencing court properly applied the Guidelines, we review the court's factual findings for clear error and its legal conclusions *de novo*. Clear error occurs when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (citations and internal quotation marks omitted)).

sentence, the district court imposed a significantly below-Guidelines sentence, based on views that are at odds with the clearly expressed policy views of the Sentencing Commission. The district court did not acknowledge the policy statements, and there is nothing in the statements made by the court during sentencing that offer any insight into *why* the court believed that a prison term was not required. There is no explanation of why the court believed that allowing Engle to continue to work and travel was consistent with the seriousness of his offense or that it would provide adequate deterrence for other would-be tax evaders. Moreover, as noted above, for more than four years after pleading guilty to tax evasion, Engle continued to work and travel, yet he paid *nothing* towards his tax debt. It was not until two weeks before the second sentencing hearing that Engle made the first payment (of less than $500), and even that nominal payment was spurred on by an inquiry from the IRS. The absence of any payments during a time when there is the greatest incentive for a defendant to be on his best behavior raises questions about the district court's belief that restitution would provide sufficient deterrence to Engle himself.

Under these circumstances, we cannot determine whether the sentence is reasonable without a fuller explanation of the reasoning behind the district court's view that a term of imprisonment as recommended by the Guidelines was not warranted and why restitution alone would provide adequate deterrence in this case.[3] *See Gall*, 552 U.S. at 50 (noting that district court "must make an individualized assessment based on the facts presented"). Because the district court's explanation of its decision to vary significantly from the Guidelines'

---

[3]Engle's failure to make any significant payment on his tax debt during the four-year period before sentencing likewise raises questions about the district court's refusal to order full restitution, an order that would carry with it significant benefits from the government's perspective with regard to collection and enforcement. On remand, the district court should reconsider this issue and provide a more detailed explanation should it again conclude that a restitution order is not required.

sentencing recommendation is insufficient to permit meaning-ful appellate review, we must vacate the sentence and remand for new sentencing further proceedings.

B.

Although the procedural deficiencies addressed above require us to vacate the sentence, we believe it proper to address a substantive aspect of the district court's sentence that may arise on remand — the court's near-exclusive focus on Engle's financial ability to pay restitution. *See United States v. Cavera*, 550 F.3d 180, 191 (2d Cir. 2008) (en banc) ("At the substantive stage of reasonableness review, an appel-late court may consider whether a factor relied on by a sen-tencing court can bear the weight assigned to it.").

It may well be that, in many cases, the sentencing decision will ultimately turn on a single § 3553(a) factor — for exam-ple, when most of the factors point only lightly in favor of a Guidelines or variance sentence, but one factor points very strongly towards one sentence or the other. And we can envi-sion cases where the ability to pay restitution might properly be the deciding factor leading to a probationary sentence. For example, if the Guidelines calculation yields a short sentenc-ing range, a district court might well elect a probationary sen-tence in order to permit the defendant to continue working so as to satisfy a restitution award, particularly if the restitution is owed to a private party. In such cases, the deference owed to district courts' sentencing decisions might require appellate courts to affirm the sentence, even if the appellate court would have weighed the factors differently. *See Gall*, 552 U.S. at 51 (requiring appellate courts to "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance"); *Cavera*, 550 F.3d at 189, 191 ("[W]e will not substitute our own judgment for the district court's on the question of what is sufficient to meet the § 3553(a) considerations in any particular case," and "we do not consider what weight we would ourselves have

given a particular factor."). Nonetheless, "inherent in the concept of reasonableness is the notion that the rare sentence may be unreasonable, and inherent in the idea of discretion is the notion that it may, on infrequent occasion, be abused." *Abu Ali*, 528 F.3d at 266 (citation and internal quotation marks omitted). And in this case, we believe the district court abused its discretion by focusing so heavily on Engle's ability to pay restitution.

The district court made it clear that, but for Engle's earning capacity, it would have imposed a within-Guidelines sentence of imprisonment: "[A]bsent the apparent ability to generate the income, I would simply impose a Guideline sentence and be done with it." J.A. 31e. In fact, other statements suggested that the district court believed not simply that Engle's payment of his tax debt was desirable, but that it was *improper* for the government to seek anything other than restitution. *See* J.A. 60 (asking the government whether the government wanted "blood or money"); J.A. 63 ("I'm concerned that I'm not hearing any effort to try to balance this out other than let's put him in jail and take away his livelihood, which will destroy the ability of the government to collect the money. I don't see how that necessarily promotes respect for the law.").

Reduced to its essence, the district court's approach means that rich tax-evaders will avoid prison, but poor tax-evaders will almost certainly go to jail. Such an approach, where prison or probation depends on the defendant's economic status, is impermissible. That was the consistent view of courts before *Booker* and its progeny. *See, e.g.*, *United States v. DeMonte*, 25 F.3d 343, 347 (6th Cir. 1994) ("[W]e may not sentence a poor convict more harshly than a rich convict simply because the rich convict is better able to make restitution."); *United States v. Bolden*, 889 F.2d 1336, 1340 (4th Cir. 1989) ("[W]e do not think that the economic desirability of attempting to preserve [the defendant's] job so as to enable him to make restitution warrants a downward adjustment from the guidelines."); *cf.* U.S.S.G. § 5H1.10, p.s. (forbidding con-

sideration of defendant's socio-economic status as a basis for departure).

While *Booker* and *Gall* have worked a substantial change in the manner in which sentencings are conducted and have vested district courts with substantially broader discretion than they possessed under the former sentencing regime, we do not believe the change wrought by *Booker* was so great that it permits district courts to rest a sentencing decision exclusively on such constitutionally suspect grounds. *See Bearden v. Georgia*, 461 U.S. 660, 661 (1983) (noting the "impermissibility of imprisoning a defendant solely because of his lack of financial resources"); *United States v. Seacott*, 15 F.3d 1380, 1389 (7th Cir. 1994) ("Allowing sentencing courts to depart downward based on a defendant's ability to make restitution would thwart the intent of the guidelines to punish financial crimes through terms of imprisonment by allowing those who could pay to escape prison. It would also create an unconstitutional system where the rich could in effect buy their way out of prison sentences."); *cf. United States v. Tomko*, 562 F.3d 558, 570 (3d Cir. 2009) (*en banc*) (post-*Gall* case affirming probationary sentence in tax evasion case; rejecting the government's claim that the district court permitted the defendant "to buy his way out of prison" because "the record exhibits no connection between the fine imposed and the failure to incarcerate").

We do not mean to suggest that the economic status of a defendant is never relevant in sentencing. It is certainly relevant when setting the amount of a fine or establishing a payment schedule, and it may well have relevance in other ways in other cases. And while we recognize the broad discretion possessed by district courts with regard to sentencing matters, we have no difficulty concluding that in this case, the district court abused that discretion. Accordingly, we conclude that the sentence imposed by the district court was substantively unreasonable because the sentencing decision was driven solely by Engle's ability to pay restitution.

### III.

To summarize, we conclude that the district court committed significant procedural error by minimizing of the seriousness of Engle's conduct, failing to consider the relevant policy statements and the need for general deterrence, and insufficiently explaining the reasons for its view that a term of imprisonment was not required. We also conclude that the sentence imposed was substantively unreasonable because of the district court's improper focus on Engle's financial ability to pay restitution. Accordingly, we hereby vacate Engle's sentence and remand for further proceedings before a different district court judge.[4]

*VACATED AND REMANDED*

---

[4]The district judge in this case also presided over the tax-evasion trials and sentencings in *United States v. Baucom*, No. 08-4493, and *United States v. Davis*, No. 08-4512, cases that, though not formally consolidated with this case, were argued before this court seriatim with this appeal. In the sentencing hearing for Davis, the district judge, who has taken senior status, stated that he no longer intended to handle criminal matters.