PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellant,*

v.

CHRISTOPHER ALLEN MORACE,

        *Defendant-Appellee.*

No. 09-4007

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(5:08-cr-00127-BR-1)

Argued: December 4, 2009

Decided: February 11, 2010

Before SHEDD and DUNCAN, Circuit Judges, and
T. S. ELLIS, III, Senior United States District Judge for the
Eastern District of Virginia, sitting by designation.

Vacated and remanded by published opinion. Judge Shedd
wrote the opinion, in which Judge Duncan and Senior Judge
Ellis joined.

## COUNSEL

**ARGUED**: Joe Exum, Jr., OFFICE OF THE UNITED
STATES ATTORNEY, Raleigh, North Carolina, for Appel-

lant. Eric Joseph Brignac, OFFICE OF THE FEDERAL PUB-LIC DEFENDER, Raleigh, North Carolina, for Appellee. **ON BRIEF:** George E. B. Holding, United States Attorney, Anne M. Hayes, Jennifer P. May-Parker, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTOR-NEY, Raleigh, North Carolina, for Appellant. Thomas P. McNamara, Federal Public Defender, G. Alan DuBois, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellee.

---

## OPINION

SHEDD, Circuit Judge:

Christopher Allen Morace pled guilty to one count of possessing child pornography. *See* 18 U.S.C. § 2252(a)(4)(B). Varying downward from the 41-51 month advisory sentencing range, the district court sentenced Morace to five years of probation and ordered him to pay a $3,000 fine. The government now argues that the sentence is unreasonable. For the following reasons, we vacate the sentence and remand this case for further proceedings.

### I

### A.

In 2007, a criminal investigation revealed that Morace had traded child pornography with an individual in California through the use of a peer-to-peer computer program. *See generally Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919-20 (2005) (explaining that peer-to-peer networks permit the users' computers to "communicate directly with each other, not through central servers"). During a search of Morace's residence, investigators seized two computers and various types of computer media. Analysis of this

material revealed that Morace possessed 159 images of child pornography (84 separate images and one video that is equivalent to 75 images). These images include numerous depictions of prepubescent girls who appear to be under the age of 12, and one image depicts a prepubescent girl exposing herself. At least 10 child-victims have been identified in this case.

As a result of the investigation, the government filed a criminal information charging Morace with one count of violating § 2252(a)(4)(B). He thereafter entered into a written plea agreement, waived his right to be indicted, and pled guilty to the charged crime. In the plea agreement, the government promised (absent changed circumstances) it would recommend Morace be sentenced at the low end of the advisory sentencing range. The statutory maximum penalty for his crime is 10 years, and the statutorily authorized term of supervised release is not less than five years or life. *See* 18 U.S.C. §§ 2252(b)(2), 3583(k).

Before sentencing, a probation officer calculated Morace's advisory sentencing range as part of the presentence investigation report ("PSR"). Using the 2007 Guidelines Manual, the officer assigned a base offense level of 18 pursuant to U.S.S.G. § 2G2.2(a)(1); added two levels pursuant to § 2G2.2(b)(2) because the material involved a prepubescent minor or a minor who had not attained the age of 12; added two levels pursuant to § 2G2.2(b)(6) because the offense involved the use of a computer for the possession of the material; and added three levels pursuant to § 2G2.2(b)(7)(B) because the offense involved at least 150 images but less than 300. From this revised offense level of 25, the officer subtracted three levels pursuant to U.S.S.G. § 3E1.1(b) for acceptance of responsibility, resulting in a total offense level of 22. Morace's lack of a prior criminal record placed him in criminal history category I; accordingly, his advisory sentencing range was 41-51 months. Neither party objected to the PSR.

At sentencing, the district court and the parties agreed that the advisory sentencing range was 41-51 months. Moreover, Morace's counsel informed the court that the parties had stipulated to a sentence at the low end of the range and stated that a 41-month sentence would be reasonable. Morace then spoke briefly to the court, expressing remorse and identifying his rehabilitation efforts. After Morace spoke, the Assistant United States Attorney ("AUSA") concurred that 41 months would be appropriate, stating:

> The government's main concern in this case is the Defendant's actual contact in any way with any minors. The program that he was using for the downloading and sharing of these images had the capacity to actually have a simultaneous chat log with the people in this peer-to-peer program. There was no evidence the Defendant had any actual contact with any children. He had a good number of images on his computer. Most of those images were of young girls. Most of those images were not pornographic.
>
> The Defendant has no prior record. He doesn't appear on any list for sharing this sort of thing. The government's interest would be vindicated by a sentence of 41 months.

J.A. 49-50. Following an off-the-record bench conference, the court continued the sentencing hearing. No explanation for the continuance appears in the record.

Approximately two months later, the district court reconvened the sentencing hearing. After confirming that the only matter left to be done was imposition of the sentence, the court announced the downward variance from the advisory sentencing range to a five-year term of probation, explaining:

> This sentence represents the variance from the advisory guideline range. Based on the factors outlined

in [§ 3553(a)], the court, in determining the particular sentence to impose, has considered the nature and circumstances of the offense and the history and characteristics of the defendant.

In addition, the court has considered the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. To afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.

In the case at bar, the court has considered the defendant's lack of prior criminal history, his ongoing effort to rehabilitate himself since the instant offense, including mental health treatment, his honorable discharge from the United States Air Force, and his enrollment in college and pursuit of a degree in aerospace engineering. Such a sentence will adequately deter criminal conduct and protect the public from further crimes of the defendant while also providing the defendant with an opportunity to continue his education and participate in mental health treatment in the most effective manner.

J.A. 55-56. The AUSA noted a general objection to the sentence at the end of the hearing.

## B.

As noted, Morace's attorney and the AUSA had urged the district court to impose a 41-month sentence, which is the lowest point of his advisory range. Because there was no discussion on the record regarding a variance before the court imposed sentence, it is unclear whether the parties were

expressly aware of the court's intent to vary downward. However, the court was not required to provide the parties with any notice of its intent to vary from the advisory range. *See Irizarry v. United States*, 128 S.Ct. 2198 (2008).[1]

Although Morace's probation sentence represents a 100% decrease from the advisory sentencing range, we have recognized that describing variance probation sentences "in mathematical terms is not very helpful;" instead, "it is better to describe the variance by considering the number of guideline offense levels between the variance sentence of probation and the recommended guideline range. . . ." *United States v. Pyles*, 482 F.3d 282, 289 (4th Cir. 2007), *cert. granted and judgment vacated*, 552 U.S. 1089 (2008); *see also Gall v. United States*, 552 U.S. 38, 47-48 (2007) (noting that "deviations from the Guidelines range will always appear more extreme — in percentage terms — when the range itself is low, and a sentence of probation will always be a 100% departure regardless of whether the Guidelines range is 1 month or 100 years"). Morace's total offense level of 22 and criminal history category of I placed him within Zone D of the Sentencing Table. U.S.S.G. Ch. 5, Pt. A., Sentencing Table. Under the Guidelines, probation is available only to defendants whose ranges fall within Zone A or Zone B. U.S.S.G. § 5B1.1(a). To reach Zone B, the district court had to vary downward by at least 12 levels. Moreover, the Guidelines authorize a sentence (like Morace's) of straight probation only to defendants whose ranges fall within Zone A. *Id.* To reach Zone A, the district court had to vary downward by at least 14 levels.

---

[1]After continuing the first sentencing hearing, the district court conducted a second off-the-record bench conference. *See* J.A. 51. We do not suggest that these off-the-record conferences are improper. However, we note their occurrence because it seems implicit by the fact of the continuance itself that the court was considering something other than a sentence within the advisory range, and it is certainly possible that the court discussed with the attorneys, off the record, the fact that it was considering a downward variance. *See generally N.L.R.B. v. Honaker Mills, Div. of Top Form Mills, Inc.*, 789 F.2d 262, 265 n.1 (4th Cir. 1986) (noting the problem that off-the-record matters can present for appellate review).

For comparison, we note that a defendant who (a) violated § 2252(a)(4)(B) by possessing less than 10 images (none involving a prepubescent minor or a minor who had not attained the age of 12 years); (b) did not use a computer; (c) received a three-level adjustment for acceptance of responsibility; and (d) had a criminal history category of I, would have an offense level of 15, an advisory range of 18-24 months, and would need a five-level downward variance to reach Zone B and a seven-level downward variance to reach Zone A. Morace's probation sentence for possessing 159 images (involving prepubescent minors who appear to be under age 12) by means of a computer is thus significantly below the advisory range for a less severe offense.

## II

Since the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines have been advisory, and our review of criminal sentences "is limited to determining whether they are 'reasonable.'" *Gall*, 552 U.S. at 46. We must "first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence - including an explanation for any deviation from the Guidelines range." *Id.* at 51.[2] If we find no significant procedural error, we must "then consider the substantive reason-

---

[2]Section 3553(a) instructs the district court to consider (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing (*i.e.*, retribution, deterrence, incapacitation, and rehabilitation); (3) the sentences legally available; (4) the Sentencing Guidelines; (5) any Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution. Section 3553(a) also instructs the court "to 'impose a sentence sufficient, but not greater than necessary, to comply with' the basic aims of sentencing as set out above." *Rita v. United States*, 551 U.S. 338, 348 (2007).

ableness of the sentence imposed under an abuse-of-discretion standard." *Id.* In doing so, we must "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.*

Where, as here, the district court decides that a sentence outside the advisory range is appropriate, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* at 50. A major departure from the advisory range "should be supported by a more significant justification than a minor one." *Id.*[3] After choosing a sentence it deems appropriate, the court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* In our review of a sentence that is outside the advisory range, we "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance," and the fact that we "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.* at 51.

## A.

Morace's advisory sentencing range was calculated primarily under U.S.S.G. § 2G2.2. The United States Sentencing Commission recently noted that "[f]or the past several years, § 2G2.2 has had a high and increasing rate of downward departures and below-guideline variances." U.S.S.C., *The History of the Child Pornography Guidelines*, 8 (Oct. 2009).[4]

---

[3]Morace argues on appeal that his sentence does not represent a "major" variance from the advisory range. *Brief for Appellee*, at 18. We disagree. *See United States v. Abu Ali*, 528 F.3d 210, 261 (4th Cir. 2008) (noting that a downward variance of 40% is "major").

[4]In fiscal years 2007 and 2008 (respectively), for offenders sentenced under § 2G2.2, the non-government sponsored below-guideline rates were

The Commission views this trend as "a comment [by some judges] on the perceived severity of the child pornography guidelines," *id.* at 54; and it is currently conducting "a review of the child pornography guidelines as a policy priority for the guidelines amendment cycle ending May 1, 2010," *id.* at 1; *see also* Felisa Cardona, *Child Porn Sentences Too Severe, Judges Say*, Denver Post, Nov. 29, 2009, at A-1 ("In a nation-wide series of hearings, members of the U.S. Sentencing Commission have heard from federal judges seeking reduced sentences for a group of defendants one would think unlikely to get sympathy from the bench: possessors of child pornography.").

In addition to the case now before us, we have seen evidence of this trend in several post-*Booker* child pornography cases. *See, e.g.*, *United States v. Smith*, 275 Fed. Appx. 184 (4th Cir. 2008) (affirming a 24-month variance sentence where the advisory range was 78-97 months); *United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007) (affirming a 42-month variance sentence where the advisory range was 78-97 months); *United States v. Johnson*, 242 Fed. Appx. 7 (4th Cir. 2007) (vacating a 144-month variance sentence where the advisory range was 210-262 months); *United States v. Medina*, 221 Fed. Appx. 231 (4th Cir. 2007) (vacating a 12-month plus one day downward departure sentence where the advisory range was 41-51 months), *cert. granted and judgment vacated*, 552 U.S. 1089 (2008).

While recognizing this trend, the Commission has also acknowledged the increasing emphasis that Congress has given to child pornography cases:

---

27.2% and 35.7%; the government sponsored below-guideline rates were 7% and 8.5%; and the above-guideline rates were 2.4% and 2%. In contrast, for all offenders during those years, the non-government sponsored below-guideline rates were 12% and 13.4%; the government sponsored below-guidelines rates were 25.6% (both years); and the above-guideline rates were 1.5% (both years). *History of the Child Pornography Guidelines*, at 8 n.33.

> For more than 30 years, and particularly in recent
> years, Congress has focused attention on the scope
> of child pornography offenses and the severity of
> penalties for child pornography offenders. Through
> creating new offenses, enacting new mandatory
> minimums, increasing statutory maximums, and pro-
> viding directives to the Commission, Congress has
> repeatedly expressed its will regarding appropriate
> penalties for child pornography offenders.

*History of the Child Pornography Guidelines*, at 6. Likewise,
we noted this congressional emphasis in *United States v.
Hecht* when we stated that "district courts, in the course of
selecting an appropriate sentence, ought to give respectful
attention to Congress' view that [child pornography crimes]
are serious offenses deserving serious sanctions." 470 F.3d
177, 182 (4th Cir. 2006) (quoting *United States v. Grigg*, 442
F.3d 560, 564-65 (7th Cir. 2006)); *see also United States v.
Mento*, 231 F.3d 912, 915 (4th Cir. 2000) ("Since 1977, Con-
gress has attempted to eliminate child pornography."), *cert.
granted and judgment vacated*, 535 U.S. 1014 (2002); *John-
son*, 242 Fed. Appx. at 11 (noting "Congress' policy judgment
— embodied in § 3553(b)(2)(A)(ii) — that child pornography
crimes are grave offenses warranting significant sentences").[5]

## B.

At oral argument, the government conceded that a down-
ward variance in this case is not improper *per se* and that,
generally speaking, a downward variance to probation in a
child pornography case *could* be reasonable under certain cir-
cumstances. *Cf. Rita*, 551 U.S. at 355 ("Even the Government
concedes that appellate courts may not presume that every
variance from the advisory Guidelines is unreasonable.").

---

[5]As we explain later, in *Hecht* we held that Congress' attempt to limit
sentencing discretion in child pornography cases by enacting 18 U.S.C.
§ 3553(b)(2)(A) is invalid under the *Booker* rationale.

However, the government contends that Morace's probation sentence is unreasonable because the district court (1) "failed to identify reasons that were sufficiently compelling to support the degree of the variance" and (2) "gave great emphasis to a single factor — Morace's wholly ordinary history and circumstances — and failed to give adequate consideration to other factors that were critically important to the sentencing decision." *Brief of the United States*, at 8. The government identifies three factors that it contends were overlooked by the court:

> (1) "the fact that, as a matter of congressional policy, downward deviations . . . are disfavored in child pornography cases;"

> (2) "the grievous harm caused to children who are sexually exploited in the production of child pornography, and Morace's role as a consumer who created a demand for that product;" and

> (3) "the Sentencing Commission's policy statement recommending a life term of supervised release for persons convicted of child pornography crimes."

*Id.* at 8-9. Presumably, because the parties agreed at the first sentencing hearing that a 41-month sentence is appropriate, and because the district court varied downward to probation at the second sentencing hearing without any apparent notice, the government did not emphasize these factors below.[6]

---

[6]Two procedural matters are worthy of note. First, although the government did not specifically assert these sentencing factors below, we find its request for a within-guidelines sentence and its objection at the end of the second hearing sufficient under the circumstances of this case to preserve these issues for appellate purposes. *See, e.g.*, *United States v. Lynn*, 2010 Westlaw 322176 (4th Cir. Jan. 28, 2010); *United States v. Curry*, 461 F.3d 452, 459 (4th Cir. 2006). Second, in the plea agreement, Morace waived his right to appeal "whatever sentence is imposed" except a sentence that

We have not yet addressed a child pornography sentence involving a downward variance to probation. Other circuit courts have done so and for various reasons have reached differing conclusions regarding the reasonableness of those sentences. *See, e.g.*, *United States v. Lychock*, 578 F.3d 214 (3d Cir. 2009) (vacating the probation sentence where the advisory range was 30-37 months); *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009) (affirming the probation sentence where the advisory range was 41-51 months); *United States v. Duhon*, 541 F.3d 391 (5th Cir. 2008) (affirming the probation sentence where the advisory range was 15-21 months); *United States v. Pugh*, 515 F.3d 1179 (11th Cir. 2008) (vacating the probation sentence where the advisory range was 97-120 months).

However, we have considered the reasonableness of downward variances to probation in several cases involving crimes other than child pornography. *See, e.g.*, *United States v. Engle*, 2010 Westlaw 114944 (4th Cir. Jan. 13, 2010) (vacating the probation sentence for tax evasion where the advisory range was 24-30 months); *United States v. Carter*, 564 F.3d 325 (4th Cir. 2009) (vacating the probation sentence for felon-in-possession of a firearm where the advisory range was 37-46 months); *Pyles* (vacating the probation sentence for aiding and abetting drug distribution where the advisory range was 63-78 months); *United States v. Hampton*, 441 F.3d 284 (4th Cir. 2006) (vacating the probation sentence for felon-in-possession of a firearm where the advisory range was 57-71

exceeds the sentencing guidelines range, but the government expressly preserved its appellate rights. Although there appears to be an open question concerning the government's right to appeal in this circumstance, *see United States v. Cohen*, 459 F.3d 490, 495 n.2 (4th Cir. 2006); *United States v. Guevara*, 941 F.2d 1299, 1299-1300 (4th Cir. 1991), Morace does not argue that the government should be precluded from pursuing this appeal, and we therefore need not decide the question, *see United States v. Brock*, 211 F.3d 88, 90 n.1 (4th Cir. 2000) (declining to consider appeal waiver *sua sponte*).

months); *see also Gall* (upholding the probation sentence for drug conspiracy where the advisory range was 30-37 months).

### C.

Because of its relative similarity to this case, we find *Engle* to be particularly instructive. In *Engle*, the defendant pled guilty to tax evasion and had a total tax liability (with penalties and interest) of over $2,000,000. The district court calculated the defendant's advisory range to be 24-30 months. At sentencing, the government argued for a sentence within the advisory range, pointing out that this was an egregious case and that incarceration was warranted to provide adequate deterrence. The court rejected the government's argument, ultimately concluding that a four-year probation sentence, with 18 months of house arrest, was appropriate in order to permit the defendant to attempt to earn income to pay his tax liability. The government appealed the sentence, arguing that it was unreasonable because it was "inconsistent with the policy considerations underlying prosecutions for income tax evasion" and because the defendant's "earning potential was not a sufficient reason to decline to impose a sentence of imprisonment as recommended by the Guidelines." 2010 Westlaw 114944, at *3. We agreed and vacated the sentence.

In doing so, we first noted that "the policy statements issued by the Sentencing Commission make it clear that the Commission views tax evasion as a serious crime and believes that, under the pre-Guidelines practice, too many probationary sentences were imposed for tax crimes." *Id.* at *5. We further noted that "the policy statements also reflect the Commission's view that general deterrence — that is, deterring those other than the defendant from committing the crime — should be a primary consideration when sentencing in tax cases," and that "there must be a real risk of actual incarceration for the Guidelines to have a significant deterrent effect in tax evasion cases." *Id.*

We found, however, that the district court "made no mention of these specific policy statements, nor did the court more broadly acknowledge the general principles underlying the Guidelines' approach to sentencing for serious economic crimes like tax evasion." *Id.* at *6. We then explained:

> We recognize that in the post-*Booker* sentencing world, district courts must give due consideration to relevant policy statements, but those policy statements are no more binding than any other part of the Guidelines. Accordingly, district courts may "vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines." *United States v. Kimbrough*, 552 U.S. 85, 101 (2007) (internal quotation marks and alteration omitted). *Nonetheless, when a non-Guidelines sentence runs directly counter to the Commission's position, either because the district court has erroneously applied the departure provisions or because it has determined in a "mine-run case" that the Guidelines range fails to reflect the § 3553(a) factors, closer review may be in order.*

*Engle*, at *6 (emphasis added, citations and internal punctuation omitted).

We deemed the sentence to be one that merited "closer review," but we found the record to be "insufficient to permit even the routine review for procedural reasonableness required in cases involving an outside-the-Guidelines sentence." *Id.*[7] We noted that although the facts of the case "could perhaps be viewed as warranting an above-Guidelines sentence, the district court imposed a significantly below-Guidelines sentence, based on views that are at odds with the

[7]As we noted in *Engle*, the argument that a district court failed to consider all of the § 3553(a) factors is properly viewed as challenging the procedural reasonableness of the sentence. *Engle*, at *4 n.1.

clearly expressed policy views of the Sentencing Commission." *Id.* However, the court "did not acknowledge the policy statements, and there [was] nothing in the statements made by the court during sentencing that offer[ed] any insight into *why* the court believed that a prison term was not required." *Id.* (emphasis in original). We concluded: "Under these circumstances, we cannot determine whether the sentence is reasonable without a fuller explanation of the reasoning behind the district court's view that a term of imprisonment as recommended by the Guidelines was not warranted and why restitution alone would provide adequate deterrence in this case." *Id.* at *7. For that reason, we vacated the sentence and remanded the case for a new sentencing.[8]

### D.

We find *Engle* to be materially indistinguishable from the case before us. Here, as in *Engle*, the district court was presented with a "mine run" defendant.[9] This fact is illustrated not only by Morace's counsel's request that he be sentenced within the advisory range, but also by the court's list of fairly commonplace reasons for imposing the probation sentence. For example, the court noted that Morace has no prior criminal history; however, that fact is taken into account in the advisory sentencing range calculation, and it simply places him within the "heartland" of persons convicted for possessing child pornography. *See, e.g.*, *Lychock*, 578 F.3d at 220 (discussing typical offender characteristics). The court also

---

[8]Additionally, we held that the sentence in *Engle* was substantively unreasonable because it was based solely on the defendant's ability to pay restitution.

[9]In *Engle*, we stated that we were being "generous" in describing the defendant's status as "mine run" in light of his conduct, which we noted could possibly have warranted an upward variance. 2010 Westlaw 114944, at *6. Although nothing in the record suggests that Morace should receive an upward variance, his advisory sentencing range of 41-51 months is higher than the range in *Engle*, and his probation sentence represents a larger downward variance.

listed Morace's honorable discharge from the military, his effort at rehabilitation, and his enrollment in college as additional sentencing factors. Although each of these circumstances is commendable, there is nothing unusual about them. Given the seemingly common circumstances of this case, we hold that the court erred by failing to provide an adequate explanation of why a term of imprisonment is not warranted in light of applicable policy statements.

We have noted above that for over three decades Congress has legislated against child pornography. As one example, in 2003, Congress enacted the "PROTECT Act," which "included certain mandatory sentencing provisions applicable to child and sexual offenses, including possession of child pornography." *Hecht*, 470 F.3d at 180. The PROTECT Act constitutes "ample evidence of Congress's intent that offenses involving child pornography be treated severely," *United States v. Goff*, 501 F.3d 250, 258 n.13 (3d Cir. 2007), and one provision in particular, 18 U.S.C. § 3553(b)(2), was designed to reduce below-guideline sentences for child pornography offenses (including possession) by permitting sentencing courts to depart below guideline ranges in very limited circumstances. Although we held in *Hecht* that § 3553(b)(2)(A) is invalid under the *Booker* rationale, we nonetheless instructed that "district courts, in the course of selecting an appropriate sentence, ought to give respectful attention to Congress' view that [child pornography crimes] are serious offenses deserving serious sanctions." 470 F.3d at 182 (quoting *Grigg*, 442 F.3d at 564-65). However, we find no indication in the record that the district court followed our instruction and considered this statement of congressional policy in choosing to sentence Morace to probation. *See Johnson*, 242 Fed. Appx. at 12 ("We see no record evidence that the district judge considered Congress' policy judgment concerning child pornography offenses in granting a variance.").

Moreover, Morace's probation sentence also runs counter to the Sentencing Commission's policy statement, expressed

in U.S.S.G. § 5D1.2(b), that recommends a lifetime term of supervised release for sex offenders. As noted, the maximum statutorily authorized term of supervised release for Morace is life. 18 U.S.C. § 3583(k). Read together with § 3583(k), the § 5D1.2(b) policy statement "reflects the judgment of Congress and the Sentencing Commission that a lifetime term of supervised release is appropriate for sex offenders in order to protect the public." *United States v. Daniels*, 541 F.3d 915, 923 (9th Cir. 2008). Because Morace was sentenced to probation rather than a term of imprisonment, he is not eligible for *any* supervised release, much less a lifetime term. *See* 18 U.S.C. § 3583(a).[10] Again, the district court failed to explain Morace's probation sentence in light of this policy statement.

E.

In short, the district court was presented with what appears to be a fairly common child pornography possession defendant. Both Morace and the AUSA agreed and argued that a 41-month sentence, which is within the advisory range, would be appropriate. However, without any request for, or prior on-the-record discussion of, a variance of any kind, the court imposed the most extreme downward variance possible: probation.[11] In doing so, the court merely stated that it had considered the various § 3553(a) factors, but it offered no specific

---

[10]Without commenting on the propriety of such a sentence, we note that some district courts have begun sentencing defendants convicted of possessing child pornography to one day of incarceration followed by a term of supervised release. *See, e.g.*, *United States v. Camiscione*, 2010 Westlaw 98947 (6th Cir. Jan. 13, 2010) (finding the sentence to be substantively unreasonable); *United States v. Stall*, 581 F.3d 276 (6th Cir. 2009) (affirming the sentence).

[11]As we have noted, the district court was not obligated to provide the parties with notice of its intent to vary downward. However, "[s]ound practice dictates that judges in all cases should make sure that the information provided to the parties in advance of the hearing, and in the hearing itself, has given them an adequate opportunity to confront and debate the relevant issues." *Irizarry*, 128 S.Ct. at 2203.

explanation as to how this sentence comports with those factors.

Based on this record, "we cannot determine whether the sentence is reasonable without a fuller explanation of the reasoning behind the district court's view that a term of imprisonment as recommended by the Guidelines [and suggested by Congress] was not warranted." *Engle*, at *7. Accordingly, we vacate the sentence and remand for a new sentencing hearing to be conducted consistent with this opinion. We express no view on the ultimate reasonableness of, or the extent of, a downward variance in this case. *See Gall*, 552 U.S. at 59 (noting that "it is not for the Court of Appeals to decide *de novo* whether the justification for a variance is sufficient or the sentence reasonable").

### III

For the foregoing reasons, we vacate the sentence and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*