**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-4307**

UNITED STATES OF AMERICA,

             Plaintiff – Appellee,

      v.

WARREN DEVIN MOSELEY,

             Defendant – Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  James A. Beaty, Jr., Senior District Judge.  (1:13-cr-00282-JAB-1)

Argued:  September 17, 2015          Decided:  October 6, 2015

Before WILKINSON, AGEE, and HARRIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED**: William J. Stevens, Bridgman, Michigan, for Appellant. Clifton Thomas Barrett, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.  **ON BRIEF:** Ripley Rand, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Warren Moseley pleaded guilty to distributing cocaine base. When the district court sentenced Moseley, it applied a two-point enhancement for possession of a firearm in connection with a drug-trafficking crime. U.S.S.G. § 2D1.1(b)(1) (2014). We hold that ample factual support justified imposition of the enhancement and thus affirm the judgment.*

I.

On July 11, 2013, the Richmond County, North Carolina Sheriff's Office directed a confidential informant to arrange for the purchase of cocaine base from Moseley. The sale occurred at Moseley's residence. The police recorded the sale with a camera hidden in the confidential informant's clothes. J.A. 13-14, 68.

About one month later, on August 13, 2013, the police executed a search warrant on Moseley's residence. In the kitchen, the officers found a dogfood bag containing approximately 32 grams (gross weight) of cocaine base and a razor blade. They also found digital scales next to a box of plastic baggies. In the master bedroom, the officers discovered a 9mm handgun, a magazine, and receipts bearing Moseley's name. J.A. 68.

---

* The court denies the government's motion to dismiss the appeal.

While the police were searching the residence, Marquita Smith arrived and asked what was happening. The officers explained to her that a confidential informant had recently purchased drugs at the residence, and that this had prompted a search for further evidence of drug activity. Smith told the police that Moseley frequented the residence as he pleased, and that she and Moseley had a child together. Smith then provided a written statement to the police saying that only she and Moseley held a key to the residence and that any drugs or weapons found there belonged to Moseley. J.A. 68.

The government thereafter obtained a three-count indictment charging Moseley with (1) distribution of 30.94 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); (2) possession with the intent to distribute approximately 32 grams of cocaine base also in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); and (3) possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). J.A. 7-8.

On October 7, 2013, Moseley struck a plea bargain. He agreed to plead guilty to count one in exchange for the government's promise to move for dismissal of counts two and three. The district court accepted Moseley's guilty plea that same day. J.A. 16-22, 33-34.

3

In preparation for sentencing, a probation officer prepared the customary presentence investigation report ("PSR"). Among other things, the PSR contained a two-point enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a firearm in connection with a drug-trafficking crime. J.A. 69. After taking this enhancement and the other relevant factors into consideration, the PSR recommended a sentence of 120 to 150 months. J.A. 86.

At the sentencing hearing, on February 25, 2014, the district court asked defense counsel if he had reviewed the PSR with Moseley. J.A. 39. Defense counsel confirmed that he had, and that Moseley had only one objection. Moseley claimed that the PSR specified incorrectly the length of time he had served for a prior conviction. The district court sustained this objection. This reduced Moseley's criminal history category from V to IV. And this reduction in turn lowered Moseley's recommended sentencing range to 100 to 125 months. J.A. 39-47.

Moseley did not object to or otherwise mention the firearm enhancement during the sentencing hearing. The government and the district court did not refer to it either. J.A. at 38-55. At the conclusion of the hearing, the district court confirmed its ruling as to Moseley's criminal history objection, found that the Guidelines calculations were appropriate, took account of the Guidelines recommendation on an advisory basis, considered

4

the § 3553(a) factors, and then sentenced Moseley to 100 months of incarceration and four years of supervised release. J.A. 51-52.

Later, on April 8, 2014, the district court filed a Statement of Reasons in which it adopted the PSR except for the erroneous criminal history specification. J.A. Supp. 1-4. Final judgment was entered that same day. J.A. 57. Moseley timely appealed. J.A. 63.

## II.

### A.

Moseley's sole challenge in his appeal is to the adequacy of the factual support underlying the firearm enhancement in U.S.S.G. § 2D1.1(b)(1). Our review of challenges to a district court's application of the Sentencing Guidelines follows familiar lines: we review "questions of law de novo and findings of fact for clear error." United States v. King, 673 F.3d 274, 281 (4th Cir. 2012). Because Moseley failed to preserve the issue he now raises, however, our review is for plain error.

Federal Rule of Criminal Procedure 52(b) permits appellate courts to review unpreserved issues only if those issues constitute (1) actual "error[s]" (2) that are "plain" and (3) that "affect[] substantial rights." Fed. R. Crim. P. 52(b). Moreover, the Supreme Court has directed lower courts to exercise their discretion to grant relief only if "'the error

5

seriously affects the fairness, integrity or public reputation of judicial proceedings.'" United States v. Ramirez-Castillo, 748 F.3d 205, 212 (4th Cir. 2014) (quoting United States v. Olano, 507 U.S. 725, 732 (1993)).

## B.

Moseley notes that a sentence may be procedurally unreasonable and thus subject to reversal if the district court bases it on "clearly erroneous facts" or "fail[s] to adequately explain" its grounds. United States v. Morace, 594 F.3d 340, 345 (4th Cir. 2010) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)). Moseley contends that the district court fell short of procedural reasonableness because it "did not make findings to support the conclusion" that "possession of the pistol was connected with drugs." Appellant's Br. 6.

Moseley's argument fails because the district court both found the necessary facts and explained its sentence. A district court "may accept any undisputed portion of the presentence report as a finding of fact." Fed. R. Crim. P. 32(i)(3)(A). "[W]hen a defendant fails to properly object to the relevant findings in his PSR, the government meets its burden of proving those facts by a preponderance of the evidence, and the district court 'is free to adopt the findings of the presentence report without more specific inquiry or explanation.'" United States v.

6

Revels, 455 F.3d 448, 451 n.2 (4th Cir. 2006) (quoting United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990)).

In this case, the PSR findings with regard to the 9mm handgun discovered at Moseley's residence were undisputed and Moseley accordingly did not object to them. And after addressing the PSR's erroneous criminal history specification, the district court was plainly entitled to adopt the handgun-related findings along with the rest of PSR by confirming that the Guidelines recommendation was correctly calculated. J.A. 51. The district court's Statement of Reasons later made this adoption explicit. J.A. Supp. at 1-4. Finally, at the close of the sentencing hearing, the district court confirmed that it had considered all of the relevant factors and that its sentence was sufficient, but not greater than necessary, to achieve the purposes of federal sentencing law. J.A. 51-52.

## C.

The facts amply support the trial court's application of the enhancement. The Guidelines provide that a defendant's offense level should "increase by 2 levels" if "a dangerous weapon (including a firearm) was possessed" in connection with the defendant's drug-trafficking crime. U.S.S.G. § 2D1.1(b)(1). The Guidelines commentary states that this enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."

7

§ 2D1.1 cmt. n.11(A). This commentary is authoritative unless it is inconsistent with the Constitution, a federal statute, or a plain reading of the Guidelines. United States v. Harris, 128 F.3d 850, 852 (4th Cir. 1997) (citing Stinson v. United States, 508 U.S. 36, 45 (1993)). Taken together, then, the Guidelines provision and the associated commentary establish a two-part process for determining whether the enhancement is warranted.

First, the government must show that a "weapon was present." We have interpreted this provision to mean the government must prove by a "preponderance of evidence that the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction." United States v. Manigan, 592 F.3d 621, 628-29 (4th Cir. 2010). Importantly, the government need not demonstrate that the drug crime and the gun possession were "precisely concurrent acts." Id. at 629. It must show only that the gun is "readily available to protect either the participants themselves during the commission of the illegal activity or the drugs and cash involved in the drug business . . . ." Id.; see also United States v. Nelson, 6 F.3d 1049, 1056 (4th Cir. 1993), overruled on other grounds by Bailey v. United States, 516 U.S. 137 (1995) (approving of enhancement because guns and drugs were stored at the same residence).

Second, after the government makes its showing, the defendant may explain why it is "clearly improbable" that the weapon was connected to his drug crime. As an example of what such an explanation could entail, the Guidelines commentary notes that the enhancement should not apply if the defendant possessed an "unloaded hunting rifle" located "in the closet." § 2D1.1 cmt. n.11(A). There is an obvious difference between a handgun and a hunting rifle -- the former is a widely used "tool of the drug trade" and those who possess handguns are more likely to be proper candidates for the enhancement. Manigan, 592 F.3d at 629.

Here, the government easily met its burden. The district court found that a 9mm handgun and magazine were discovered in the master bedroom of the residence where Moseley committed his drug offense. Next to the handgun lay receipts bearing Moseley's name. The kitchen of the same residence contained drugs and drug paraphernalia. Finally, the mother of Moseley's child, and the only person other than Moseley who held a key to the residence, informed the police that any drugs or weapons found at the residence belonged to Moseley. J.A. 68.

Moreover, Moseley did not attempt to rebut the government's evidence by arguing that the firearm's connection to the crime was clearly improbable. The firearm in this case was a handgun, a type of gun recognized as an "indicia of drug dealing." United

9

States v. Ward*, 171 F.3d 188, 195 (4th Cir. 1999). Finally, that one month passed between the recorded sale and the search of the residence is not enough to disassociate the handgun from Moseley's crime of conviction where, as here, the additional drugs and drug paraphernalia found at the residence showed that Moseley was engaged in an ongoing drug-trafficking scheme.

## III.

The district court was not clearly erroneous in finding that the firearm in this case was connected to Moseley's drug-trafficking crime. And that the district court's conclusion was not clearly erroneous means that there was no error here, much less a plain error requiring us to undertake the rest of the four-part inquiry from Olano. We therefore affirm the district court's judgment.

AFFIRMED

10