**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-4604

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

STEVEN RAY LOVIN,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.   Terrence W. Boyle, District Judge.  (7:06-cr-00045-BO-3)

Argued:  March 25, 2010          Decided:  September 8, 2010

Before TRAXLER, Chief Judge, and GREGORY and SHEDD, Circuit Judges.

Affirmed by unpublished opinion.  Chief Judge Traxler wrote the majority opinion, in which Judge Gregory joined.  Judge Shedd wrote a dissenting opinion.

**ARGUED:** Milton Gordon Widenhouse, Jr., RUDOLF, WIDENHOUSE & FIALKO, Chapel Hill, North Carolina, for Appellant.   Anne Margaret Hayes, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** George E. B. Holding, United States Attorney, Banumathi Rangarajan, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

TRAXLER, Chief Judge:

Steven Lovin pleaded guilty to a RICO conspiracy charge, see 18 U.S.C.A. § 1962(d) (West 2000), and a charge of conspiring to commit an offense against the United States, see 18 U.S.C.A. § 371 (West 2000), and was sentenced to 144 months' imprisonment. Lovin appeals, challenging the sentence imposed by the district court. We find no reversible error and accordingly affirm the sentence.[1]

I.

A joint federal and state investigation (known as "Operation Tarnished Badge") uncovered widespread corruption and criminal conduct among members of the Sheriff's Office of Robeson County, North Carolina, who conspired to use their positions as law enforcement officers for personal financial gain and to increase their power and influence within the department and the community. The criminal acts engaged in by the members of the conspiracy included arson, assault, extortion, and unlawful searches and seizures.

---

[1] Shortly before oral argument was held in this case, the government filed an unopposed motion to remove the case from the argument calendar and to remand to the district court for re-sentencing. We previously denied that portion of the motion seeking to remove the case from the oral argument calendar, and we now deny the motion to remand.

3

As a result of the investigation, Appellant Steve Lovin, a detective in the Sheriff's Office, entered into a plea agreement under which he pleaded guilty to the RICO conspiracy charge and the charge of conspiring to defraud the United States. The charges were based, inter alia, on actions that Lovin and his partner and co-defendant James Hunt took while conducting traffic stops on Interstate 95. Lovin and Hunt used racial profiling to target Hispanics they believed might be transporting illegal drugs and currency, and they skimmed off for themselves a portion of the currency seized during these stops.[2] Over the course of six traffic stops, Lovin and Hunt kept $150,000 for themselves. At the time of his plea, Lovin had $40,000 hidden in a secret compartment he had installed in his house.

Lovin's advisory sentencing range as calculated by the district court was 70-87 months' imprisonment. The district court varied upward and sentenced Lovin to 144 months on the RICO conspiracy charge and a concurrent 60 months on the § 371 charge. Lovin appealed, challenging the district court's

---

[2] Under the Department of Justice's Equitable Sharing Program, the federal government may share the funds seized in drug cases with the local law enforcement agency that seized the funds. See 21 U.S.C.A. § 881(e)(1)(A) (West 1999 & Supp. 2010); In re U.S. Currency, $844,520.00, 136 F.3d 581, 583 (8th Cir. 1998) (per curiam).

calculation of the Guidelines sentencing range and the reasonableness of the sentence imposed by the district court. In its brief to this court, the government contended that the appeal waiver contained in Lovin's plea agreement barred all of the issues raised by Lovin save his challenge to the reasonableness of the 144-month sentence.

Shortly before oral argument was scheduled to take place, the government filed an unopposed motion to remove the case from the argument calendar and to vacate and remand for resentencing. The government argued that under recent case law from this court, it was clear that the sentence was procedurally unreasonable because the district court failed to sufficiently explain its decision to vary so significantly from the Guidelines' advisory sentencing range. The government therefore requested that this court vacate the sentence and remand for a full resentencing. We denied the motion to remove the case from the oral argument calendar and heard argument as originally scheduled.

The government's concession of error "does not end our inquiry, . . . as we are not at liberty to vacate and remand for resentencing on the Government's concession of error alone." United States v. Rodriguez, 433 F.3d 411, 414 n.6 (4th Cir. 2006); accord United States v. Robinson, 460 F.3d 550, 558 n.7 (4th Cir. 2006) ("Our judicial obligations compel us to examine

5

independently the errors confessed." (internal quotation marks and alteration omitted)). After reviewing the briefs and the transcript of the proceedings below and considering the arguments of the parties, we find no error in the sentencing and we therefore affirm.[3]

## II.

Lovin raises several challenges to the district court's calculation of his advisory Guidelines sentencing range and the court's ultimate determination of the appropriate sentence.

### A.

Lovin first contends that the district court erred by applying an obstruction-of-justice enhancement that was premised

---

[3] At oral argument, the government explicitly waived its prior reliance on the appeal waiver contained in Lovin's plea agreement, and this court does not sua sponte enforce such waivers. See, e.g., United States v. Brock, 211 F.3d 88, 90 n.1 (4th Cir. 2000); United States v. Metzger, 3 F.3d 756, 757-58 (4th Cir. 1993). Moreover, the plea agreement permitted Lovin "to appeal from a sentence in excess of the applicable advisory Guideline range that is established at sentencing," J.A. 145, but did not expressly prohibit Lovin from challenging issues "that relate to the establishment of the . . . Guideline range," United States v. Cohen, 459 F.3d 490, 493 (4th Cir. 2006). Under these circumstances, we do not believe the plea agreement forecloses Lovin's challenges to the Guidelines calculations underlying the district court's sentence. See, e.g., United States v. Harvey, 791 F.2d 294, 303 (4th Cir. 1986) ("Having concluded that the disputed provision was ambiguous in the respect found dispositive by the district court, we further conclude that under the plea bargaining principles above stated the provision must be read against the Government.").

on Lovin's pre-plea contacting of several witnesses in violation of the terms of his pre-trial supervision. We find no error.

Under the Sentencing Guidelines, a two-level enhancement for obstruction of justice may be applied if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1 (2007). "[T]hreatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so," qualifies for the enhancement. Id. cmt. n.4(a). When applying the enhancement, the district court adopted the rulings and findings made at an earlier hearing in which the government sought to revoke Lovin's pre-trial supervision based on Lovin's contacts with the witnesses, and the court also adopted the factual findings set out in the PSR regarding the contacts.

The evidence presented at the earlier hearing established that Lovin contacted various witnesses, but the evidence did not establish that Lovin threatened, intimidated, or attempted to influence those witnesses, as required by § 3C1.1. And at sentencing, Lovin presented evidence showing that while he contacted some potential witnesses (Michael Britt, Herman Madden, and Mark Locklear), he did not attempt to improperly

7

influence them. Nonetheless, the facts set forth in the PSR established that Lovin had contacted co-defendant Hunt and told him "not to cooperate with investigators in the instant offense," J.A. 254, and that Lovin had likewise attempted to influence the cooperation of Paul Locklear and James Dallas Jacobs. Lovin did not object to those portions of the PSR, nor did he present at sentencing any evidence countering those factual determinations. Under these circumstances, the district court's adoption of those uncontroverted portions of the PSR provides a sufficient factual basis to support the enhancement for obstruction of justice. See Fed. R. Crim. P. 32(i)(3)(A) (noting that sentencing court "may accept any undisputed portion of the presentence report as a finding of fact").

B.

Lovin also challenges the district court's refusal to reduce the offense level for Lovin's acceptance of responsibility. Again we find no error.

The Guidelines authorize an offense-level reduction for a defendant who "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Conduct that results in an obstruction-of-justice enhancement, however, "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." Id. cmt. n.4 (emphasis added). Nonetheless, in "extraordinary cases," an acceptance-of-

8

responsibility reduction may be appropriate even in the face of an obstruction-of-justice enhancement. Id. We have just affirmed the district court's application of an obstruction-of-justice enhancement, and Lovin has not established that his is an extraordinary case. Under these circumstances, we cannot say the district court clearly erred in denying Lovin an acceptance-of-responsibility adjustment. See United States v. Miller, 77 F.3d 71, 74 (4th Cir. 1996) ("The district court's decision whether to grant a two-level reduction for acceptance of responsibility is a factual determination that we review for clear error.").

## C.

Lovin also challenges the district court's decision to apply a four-level role-in-the-offense enhancement. See U.S.S.G. § 3B1.1. We find no error.

The district court had before it at sentencing the PSR, which recommended a three-level enhancement based on Lovin's alleged role as a manager or supervisor in the offense. See U.S.S.G. § 3B1.1(b) ("If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by **3** levels."). As support for the position that Lovin was a manager or supervisor, the PSR relied on information from Hunt and the investigators on the case. The

9

PSR stated: "According to Hunt, Lovin determined when and how they would steal money from highway seizures. Lovin also instructed Hunt how to spend the stolen money to conceal the true source of the funds and to evade detection by other law enforcement agencies." J.A. 253. The PSR also stated that: "According to investigators, Lovin directed the activities of James Hunt by instructing and directing when and how they would steal money from highway seizures." J.A. 254.

Lovin objected to the role-in-the-offense enhancement. In opposition to the information set out in the PSR, Lovin submitted his own affidavit contradicting the PSR's description of his relationship with Hunt, and counsel for Lovin submitted oral argument against any such enhancement. During these discussions at the sentencing hearing, the district court informed the parties that it was considering an enhancement of four levels rather than three. See U.S.S.G. § 3B1.1(a) ("If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by **4** levels."). After some digression, the court addressed the subject of Lovin's role in the offense when Lovin's attorney informed the court that Lovin had nothing further to present on the legal issue and the court stated that an increase of four levels was proven to be appropriate.

On appeal, Lovin contends that the district court failed to make the factual findings necessary to support the role-in-the-offense enhancement. See Fed. R. Crim. P. 32(i)(3)(B) (providing that at sentencing, the district court "must -- for any disputed portion of the presentence report or other controverted matter -- rule on the dispute or determine that a ruling is unnecessary"); United States v. Llamas, 599 F.3d 381, 388 (4th Cir. 2010) ("[A] sentencing court must provide a sufficient explanation of its rationale in making factual findings to support its calculation of a defendant's Guidelines range." (internal quotation marks omitted)). We disagree.

Although the court did not at the hearing articulate the basis for its decision to apply the four-level enhancement, in its formal written judgment the court indicated clearly that it adopted the findings in the PSR with the addition of an extra point because Lovin was an organizer or leader. Obviously implicit in this acceptance of the information in the PSR was the court's decision to credit the information provided by Hunt and the investigators over the affidavit of Lovin. Under these circumstances, the court's subsequent adoption of the PSR was a proper means of resolving the disputed factual issues underlying the § 3B1.1 enhancement. See United States v. Walker, 29 F.3d 908, 911 (4th Cir. 1994) (explaining that the district court may satisfy its obligation to resolve sentencing disputes by

11

adopting the findings in the PSR: "Simply adopting the PSR's findings in toto is sufficient when the context of the ruling makes clear that the district court intended by the adoption to rule on each of the alleged factual inaccuracies." (internal quotation marks and alteration omitted)). The only remaining question, then, is whether the facts set forth in the PSR and accepted by the district court are sufficient to support the four-level enhancement applied by the court.

To determine whether a defendant can be considered a leader or organizer,[4] rather than merely a manager or supervisor subject to a lesser enhancement, the Guidelines instruct sentencing courts to consider

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n.4. The facts set forth in the PSR and adopted by the district court -- that Lovin made the decisions about when and how the money would be stolen, and that Lovin

---

[4] The leader-organizer enhancement applies if the "criminal activity . . . involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). Lovin does not dispute that the criminal activity at issue here involved five or more participants or was otherwise extensive.

instructed Hunt about how to conceal the source of the stolen funds and evade detection -- reflect several of these factors, showing that Lovin was the leader of this criminal activity. With regard to the traffic stops, there was little left for Hunt to do except follow Lovin's instructions. After the thefts, it was again Lovin who was telling Hunt what to do to avoid being caught. While not all of the factors listed in the Guidelines are present in this case, there is no such requirement in the Guidelines, nor do the Guidelines demand, that any particular weight be given to any particular factor. See, e.g., United States v. Wasz, 450 F.3d 720, 729 (7th Cir. 2006) ("No one of these factors is considered a prerequisite to the enhancement, and, at the same time, the factors are not necessarily entitled to equal weight.").

The evidence set forth in the PSR permitted the district court to conclude that Lovin bore the primary responsibility for the operation of the traffic stops by controlling Hunt's actions with regard to these stops, and that Lovin's greater culpability warranted a leadership enhancement. See Llamas, 599 F.3d at 390 ("[T]he aggravating role adjustment is appropriate where the evidence demonstrates that the defendant controlled the activities of other participants . . . ." (internal quotation marks omitted)); United States v. Sierra, 188 F.3d 798, 804 (7th Cir. 1999) (explaining that the Guideline factors "must be

13

weighed by the district court in light of the Guidelines' intent to punish with greater severity leaders and organizers of criminal activity"); United States v. Moore, 29 F.3d 175, 179 (4th Cir. 1994) ("These roles in the offense provisions were designed to permit sentencing judges to make individualized distinctions among defendants engaged in a criminal enterprise."). The question of a defendant's role in the offense is an inherently factual one, and, given the facts of this case, we cannot say that the district court clearly erred by concluding that a four-level enhancement was warranted. See United States v. Kellam, 568 F.3d 125, 147-48 (4th Cir. 2009) ("The court's ruling regarding a role adjustment is a factual determination reviewed for clear error.").

D.

When imposing sentence, the district court must consider the advisory Guideline range and the arguments of the parties in light of the factors set forth in 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2010), and the court must select what it believes to be the appropriate sentence based on an "individualized assessment" of the facts of the case. Gall v. United States, 552 U.S. 38, 50 (2007). "Regardless of whether the district court imposes an above, below, or within-Guidelines sentence, it must place on the record an individualized assessment based on the particular facts of the case before it." United States v.

14

Carter, 564 F.3d 325, 330 (4th Cir. 2009) (internal quotation marks omitted).

Lovin contends that the district court failed to sufficiently explain the reasoning behind the sentence it selected, particularly given the extent of the variance between advisory sentencing range of 70-87 months and the 144-month sentence actually imposed by the district court.[5]  See, e.g., Gall, 552 U.S. at 50 ("We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one.").  We disagree.

The district court did not state in open court that it had considered the § 3553(a) factors.  Nonetheless, the statements made by the district court during the sentencing hearing and the "Statement of Reasons" filed along with the judgment of conviction make it clear that the court did consider the § 3553(a) factors.  And in its Statement of Reasons, the court indicated that the above-Guidelines sentence was warranted by consideration of four of the § 3553(a) factors -- the nature and

---

[5]  Lovin also contends that the district court erred by failing to move incrementally through successively higher offense levels when departing from the advisory Guideline range. See U.S.S.G. § 4A1.3(a)(4)(B) (2007); United States v. Dalton, 477 F.3d 195, 199 (4th Cir. 2007).  Because Lovin did not have a category VI criminal history and the departure was not premised on a determination that Lovin's criminal history score under-represented the seriousness of his history, § 4A1.3(a)(4)(B) and Dalton are inapplicable, and Lovin's challenge is without merit.

circumstances of the offense, see 18 U.S.C.A. § 3553(a)(1), the need for the sentence to reflect the seriousness of the offense and to promote respect for the law, see id. § 3553(a)(2)(A), the need to provide adequate deterrence, see id. § 3553(a)(2)(B), and the need to protect the public, see id. § 3553(a)(2)(C).

Although the district court did not address each individual issue at the moment that it formally announced its sentence, the statements made by the district court throughout the sentencing hearing clearly revealed the basis for the court's sentence. The court repeatedly noted the seriousness of Lovin's offenses, and the court made it clear that it found Lovin's crimes to be particularly egregious because he used the power of his badge to commit the crimes. See J.A. 201 ("[T]he entire police power of the state has been corrupted and . . . used for criminal purpose."). The court noted that Lovin and Hunt preyed on those who "had no voice" because they were in the country illegally, J.A. 224, and the court rightly expressed its outrage that Lovin had perjured himself in the trials of the victims of Lovin's cash-skimming scheme. The court's statements clearly bear on the § 3553(a) factors that the court believed required an above-Guidelines sentence, and the statements reflect an individualized assessment by the court of the particular facts of Lovin's case. If the district court had made these statements contemporaneously with the court's pronouncement of

16

sentence, there could be no doubt about the sufficiency of the court's explanation. See United States v. Engle, 592 F.3d 495, 500 (4th Cir. 2010) ("[T]he court's explanation must . . . be sufficient to satisfy the appellate court that the district court has considered the parties' arguments and has a reasoned basis for exercising its own legal decisionmaking authority." (internal quotation marks and alterations omitted)). That the statements were instead made throughout the course of the hearing does not change that conclusion. Between the statements made at the hearing and the conclusions reached in the formal judgment, the reasons for the court's sentence are quite clear. Accordingly, we reject Lovin's claim that the district court failed to adequately explain the basis for the above-Guidelines sentence that it imposed.

To the extent that Lovin's brief can be understood as challenging the substantive reasonableness of the sentence imposed by the district court, the challenge fails. Given the nature of Lovin's conduct and the extent to which his crimes brought disrepute to legal system, we cannot say that the district court abused its discretion by imposing a sentence of 144 months. See United States v. Pauley, 511 F.3d 468, 473-74 (4th Cir. 2007) ("Substantive reasonableness review entails taking into account the totality of the circumstances, including the extent of any variance from the Guidelines range. . . .  In

17

reviewing the substantive reasonableness of the sentence, we may consider the extent of the deviation, but we must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. Even if we would have reached a different sentencing result on our own, this fact alone is insufficient to justify reversal of the district court." (internal quotation marks and citation omitted)).

## III.

Accordingly, for the foregoing reasons, we hereby affirm Lovin's sentence.

AFFIRMED

SHEDD, Circuit Judge, dissenting:

As the majority notes, before oral argument the government filed an unopposed motion to remand for resentencing. The government asserted that the district court "did not follow the procedures outlined in [United States v. Carter, 564 F.3d 325 (4th Cir. 2009)]," and it observed that "[o]n remand, the parties should be permitted to address any objections they wish to assert regarding the defendant's sentencing guidelines calculations." At oral argument, the government reiterated this position, and Lovin agreed.

The majority is correct that we are not bound by a party's concession of error. However, under the specific circumstances of this case, the interests of justice are best-served by granting the government's well-reasoned, good-faith concession of error and remanding to give the district court the opportunity to resentence Lovin in a manner in which the parties have confidence. See generally Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 571-72 (1980) (noting that "[t]o work effectively, it is important that society's criminal process satisfy the appearance of justice" (quotation marks and citation omitted)).

Because I would grant the government's unopposed motion to remand, I dissent from the majority's decision to affirm the sentence.

19