**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 10-4259**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MICHAEL WAYNE CARROLL,

Defendant - Appellant.

_____

Appeal from the United States District Court for the Western District of Virginia, at Big Stone Gap.  James P. Jones, District Judge.  (2:09-cr-00011-jpj-pms-1)

_____

Argued:  May 13, 2011                    Decided:  June 29, 2011

_____

Before GREGORY, WYNN, and DIAZ, Circuit Judges.

_____

Affirmed by unpublished opinion.  Judge Wynn wrote the opinion, in which Judge Gregory and Judge Diaz joined.

_____

**ARGUED:** Randy Virlin Cargill, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellant.  Jennifer R. Bockhorst, OFFICE OF THE UNITED STATES ATTORNEY, Abingdon, Virginia, for Appellee.  **ON BRIEF:** Larry W. Shelton, Federal Public Defender, Roanoke, Virginia, Brian J. Beck, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Abingdon, Virginia, for Appellant.  Timothy J. Heaphy, United States Attorney, Roanoke, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Defendant Michael Wayne Carroll pled guilty to charges arising from his involvement in a conspiracy to possess and pass counterfeit instruments. On appeal, he challenges the reasonableness of his sentence on both procedural and substantive grounds. For the reasons explained below, we affirm Defendant's sentence.

I.

In September 2009, Defendant pled guilty, without a plea agreement, to one count of conspiracy to possess and pass counterfeit money orders with intent to defraud, in violation of 18 U.S.C. § 371; three counts of possession with intent to pass false documents purporting to be actual security or financial instruments, in violation of 18 U.S.C. § 514(a)(2); and one count of possession of counterfeit currency, in violation of 18 U.S.C. § 472. Defendant's Presentence Report ("PSR") recommended a total offense level of 19, a criminal history category of IV, and an advisory Guideline range of 46-57 months' imprisonment.

When Defendant made his initial appearance in federal court in August 2009, it was by writ from a Kentucky detention facility. Following Defendant's pleas of guilty in September 2009, a sentencing date was scheduled for December 15, 2009.

2

However, the sentencing date was rescheduled for February 2010 because the probation officer needed more time to complete Defendant's PSR. Defendant was released from the custody of the state of Kentucky on December 31, 2009.

In Defendant's PSR, paragraph 59 noted his 2007 conviction in Kentucky state court for possession of a forged instrument, for which he received five years' incarceration. Defendant's PSR recommended no criminal history points on the basis of this conviction. Paragraph 60 of Defendant's PSR noted that in March 2006 Defendant advertised on the internet that he had a Yorkshire puppy for sale. A purchaser agreed to buy the dog for $1,500 and sent a Western Union money transfer. Defendant did not, however, send a dog in return. Defendant was convicted in Kentucky state court for theft by deception in August 2007. Defendant's PSR recommended the addition of three criminal history points on the basis of this conviction.

Defendant objected to Paragraph 60 of his PSR, arguing that the Kentucky theft by deception constituted relevant conduct to his federal charges and therefore should not have resulted in additional criminal history points. Defendant also argued that he was entitled to a downward departure under Sentencing Guideline § 5K2.23, which would award him a credit for a prior fully-served state sentence involving relevant conduct. The district court overruled Defendant's objections.

Additionally, Defendant's PSR recommended an increase in the base offense level by eight levels since the intended loss amount was more than $70,000 but not more than $120,000. See U.S. Sentencing Guidelines Manual ("USSG") § 2B1.1(b)(1)(E). The district court found, however, that due to the scope and nature of Defendant's scheme "it is probable that there are more victims who have not been identified." The district court stated that while the actual loss "cannot be determined precisely enough to apply to the advisory guideline calculation, the facts are sufficiently clear to allow the court to consider a greater loss in judging the seriousness of the defendant's conduct." The district court noted that had the loss been calculated at the next higher level, Defendant's Guideline range would have been 57 to 71 months of imprisonment.

The district court ultimately ruled that an upward variance from the recommended Guideline range was justified because (1) the loss amount attributable to Defendant underestimated the actual harm; (2) Defendant utilized vulnerable persons as accomplices; and (3) Defendant used threats of violence to intimidate some of his accomplices. The district court

therefore sentenced Defendant to a term of 72 months' imprisonment.[1] Defendant appeals.

II.

We review the sentence imposed by the district court for reasonableness under a deferential abuse of discretion standard. Gall v. United States, 552 U.S. 38, 51 (2007). We first ensure that the district court committed no significant procedural error, such as improperly calculating the Guideline range, selecting a sentence based on clearly erroneous facts, or failing to explain the sentence imposed. Id.; United States v. Carter, 564 F.3d 325, 328 (4th Cir. 2009). We then consider the substantive reasonableness of the sentence. Gall, 552 U.S. at 51; United States v. Wilkinson, 590 F.3d 259, 269 (4th Cir. 2010). When reviewing substantive reasonableness, we consider the extent of any deviation from the recommended Guideline range, giving due deference to the district court's decision that the 18 U.S.C. § 3553(a) factors justify the extent of the variance. Gall, 552 U.S. at 51.

---

[1] The district court published its findings at United States v. Carroll, 691 F. Supp. 2d 672 (W.D. Va. 2010).

III.

Defendant argues that the district court miscalculated his criminal history category by attributing three criminal history points to his Kentucky conviction for theft by deception. Defendant contends that this offense was relevant conduct to his instant offenses and therefore should not have resulted in additional criminal history points.

The Guidelines provide that three criminal history points are to be allocated "for each prior sentence of imprisonment exceeding one year and one month." USSG § 4A1.1(a). However, § 4A1.1(a) excludes convictions for conduct that is "relevant conduct" to the instant offense. See USSG § 4A1.2 cmt. n.1. Relevant conduct includes all acts and omissions "that were part of the same course of conduct or common scheme or plan as the offense of conviction." USSG § 1B1.3(a)(2).

We review a district court's determination concerning relevant conduct for clear error. United States v. Hodge, 354 F.3d 305, 313 (4th Cir. 2004). This standard requires reversal only if we are "'left with the definite and firm conviction'" that the district court has made a mistake. United States v. Stevenson, 396 F.3d 538, 542 (4th Cir. 2005) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573 (1985)). If the district court's account is plausible in light of the entire record, we

6

will not reverse the finding simply because we would have come to a different conclusion. Id.

The district court found that Defendant's Kentucky theft by deception conviction was not substantially connected to the present offenses. It explained that "[a]lthough occurring during the same general period of time as the present offenses, [the Kentucky theft by deception] lacked a common victim, accomplice, purpose, or modus operandi as [Defendant's] present scheme." Other than being fraudulent and fueled by greed, the district court said, "the offenses have no connection or similarity."

We hold that the district court did not clearly err in ruling that the Kentucky theft by deception was not relevant conduct to the instant offenses. Defendant's Kentucky conviction arose from his failure to deliver a dog that he had advertised on the internet. By contrast, the instant offenses arose from Defendant's obtaining counterfeit financial instruments and then cashing them with the help of accomplices. Given these circumstances, the district court could reasonably conclude that the Kentucky theft by deception conviction was not relevant conduct to Defendant's instant offenses. See Hodge, 354 F.3d at 314 n.3 (noting that mere fact that two offenses both involved cocaine distribution along the East Coast would

7

not be alone sufficient to support a finding of relevant conduct).

IV.

Defendant next argues that the district court did not adequately explain its decision to deny him a downward departure for time served on his Kentucky state court conviction for possession of a forged instrument.

We recognized in Carter that "[r]egardless of whether the district court imposes an above, below, or within-Guidelines sentence, it must place on the record an 'individualized assessment' based on the particular facts of the case before it." Carter, 564 F.3d at 330 (quoting Gall, 552 U.S. at 50)). Moreover, "the district court must 'state in open court' the particular reasons supporting its chosen sentence." Id. at 328 (quoting 18 U.S.C. § 3553(c)). We stated that when "'the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence' than that set forth in the advisory Guidelines, a district judge should address the party's arguments and 'explain why he has rejected those arguments.'" Id. (quoting Rita v. United States, 551 U.S. 338, 357 (2007)).

Sentencing Guideline § 5G1.3 prescribes an adjustment to the sentence when the defendant is (1) currently serving a term of incarceration for another offense that is relevant conduct to

8

the instant offense, and (2) the relevant conduct was the basis for an increase in the offense level for the instant offense. USSG § 5G1.3(b). Application Note 4 states that a downward departure "is not prohibited" when the defendant has completed serving a term of imprisonment, and the Guideline would have otherwise provided an adjustment. USSG § 5G1.3(b) cmt. n.4. This departure is codified by Guideline § 5K2.23, which states that a downward departure may be appropriate if the defendant (1) has completed a term of imprisonment, and (2) §5G1.3(b) would have provided an adjustment "had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense." USSG § 5K2.23.

The district court rejected Defendant's argument for a downward departure, explaining that "the Kentucky offense was not a basis for an increase in the offense level for the instant offenses of conviction." The district court believed that Defendant was therefore not entitled to the § 5G1.3 adjustment. See USSG § 5G1.3(b). It followed that Defendant was also not entitled to the § 5K2.23 departure. See USSG § 5K2.23. The district court stated that "even if [§ 5K2.23] did apply, I would not exercise my discretion to grant a downward departure. . . . [A]n appropriate punishment in this case does not include a reduction for the time served for the Kentucky conviction."

9

Insofar as Defendant argues the district court failed to explain its decision, our review of the record convinces us that the district court satisfied its responsibility to explain its sentencing determination. Indeed, the language excerpted above indicates that the district court considered and rejected his argument for a downward departure. Defendant's argument that the district court erred in this regard is without merit. See Rita, 551 U.S. at 358-59 (district court's explanation for denying a downward departure was sufficient when record and context revealed it had considered evidence and arguments).

To the extent Defendant seeks our substantive review of the district court's determination, we decline the invitation.[2] The denial of a downward departure is not subject to appellate review "unless the court failed to understand its authority to do so." United States v. Brewer, 520 F.3d 367, 371 (4th Cir. 2008). The record shows that the district court understood its authority to depart and chose not to do so. This determination is therefore not subject to appellate review.

---

[2] Defendant also argues the district court abused its discretion in not granting an adjustment where it was the district court's own rescheduling of Defendant's sentencing that made him ineligible for the adjustment under § 5G1.3. Defendant does not, however, cite any authority recognizing such an error. We note moreover that the district court explained why Defendant was not eligible for the adjustment.

V.

Defendant also argues that the district court erred in anchoring its significant upward variance upon unproven financial losses.

The Guidelines specify that the district court "need only make a reasonable estimate of the loss." USSG § 2B1.1 cmt. n.3(C). The Application Notes to the Guidelines contain a list of factors to consider when estimating loss amount, including the scope and duration of the offense. Id. at cmt. n.3(C)(vi). District courts are not prohibited from extrapolating loss amount where there is an evidentiary basis for the calculation. See United States v. Pierce, 409 F.3d 228, 234 (4th Cir. 2005) (approving district court's extrapolation of loss amount from known data). We review a district court's calculation of loss amount under a clear error standard. United States v. Miller, 316 F.3d 495, 503 (4th Cir. 2003).

This Court reviews the substantive reasonableness of a variance sentence under an abuse of discretion standard. See Carter, 564 F.3d at 328. When reviewing a variance sentence, we consider the district court's decision to vary and the extent of the variance, giving due deference to the district court's decision "'that the [18 U.S.C.] § 3553(a) factors, on a whole, justify the extent of the variance.'" United States v. Engle, 592 F.3d 495, 500 (4th Cir. 2010) (quoting Gall, 552 U.S. at

11

51), cert. denied, 131 S. Ct. 165 (2010). Variance sentences that contain plausible justifications grounded in §3553(a) will be deemed reasonable, but the district court must support its determination with reasons "'sufficiently compelling to support the degree of the variance.'" United States v. Morace, 594 F.3d 340, 346 (4th Cir. 2010) (quoting Gall, 552 U.S. at 50), cert. denied, 131 S. Ct. 307 (2010).

In this case, Defendant argues that the district court's above-Guideline sentence contravenes the Sentencing Commission's attempt to equalize punishments for fraud offenders based on loss amount and was "contrary to the policies of the Sentencing Commission." Brief of Appellant at 14-15.

Defendant's offense level was determined with reference to Guideline § 2B1.1. That provision contemplates an upward departure when the prescribed offense level "substantially understates the seriousness of the offense."[3]  USSG § 2B1.1 cmt. n.19(A).  Insofar as § 2B1.1 does not mandate a strict correlation between the loss amount and the sentence imposed, Defendant cannot demonstrate that the Sentencing Commission sought to equalize punishments based on loss amount alone.  He

---

[3] We have recognized that the practical effects of applying a departure and a variance are the same. See United States v. Diosdado-Star, 630 F.3d 359, 365 (4th Cir. 2011), cert. denied, __ S. Ct. __, No. 10-10257, 2011 WL 1671037, (U.S. May 31, 2011).

consequently fails to show that his sentence is contrary to any Sentencing Guideline policy.

Defendant also argues that his sentence contradicts the notions of due process and sufficient proof behind the Guideline scoring system. He claims his enhanced sentence was based on "the unproven suspicion that a higher loss figure might be applicable." Brief of Appellant at 18.

At Defendant's sentencing hearing, Special Agent Greg Watson testified that he believed the government was not able to identify the full amount of loss due to the number of victims, not all of whom could be found, and the nature of Defendant's scheme, which involved counterfeit money orders, not all of which could be traced. Under the Guidelines, the district court need only make a reasonable estimate of the loss. USSG § 2B1.1 cmt. n.3(C). The district court's finding that the loss caused by Defendant exceeded $120,000 was not clearly erroneous given the scope and duration of the offense.

More importantly, the district court did not actually reject the probation officer's loss assessment and recalculate the Guideline range based on a higher amount. It instead imposed a variance sentence based, in part, on its finding that "the loss amount attributable to the defendant underestimate[d] his actual harm." Indeed, the district court's decision to impose an upward variance was not based on loss amount alone,

13

but also took into account Defendant's use of vulnerable persons as accomplices, and his use of threats to intimidate his accomplices. Because the district court supported its determination to vary upward with reasons sufficiently compelling to support the degree of the variance, we do not believe that the district court abused its discretion in sentencing Defendant to 72 months' imprisonment. See Morace, 594 F.3d at 346.

## VI.

For the reasons stated herein, Defendant's sentence is

AFFIRMED.