**UNITED STATES of America,**

v.

**Deauntta MALLOY, Defendant.**

**No. 1:06–CR–394–20 (GLS).**

United States District Court, N.D. New York.

Feb. 24, 2012.

---

Richard S. Hartunian, United States Attorney, Steven D. Clymer, Assistant U.S. Attorney, of counsel, Syracuse, NY, for United States.

Lisa Peebles, Federal Public Defender, Syracuse, NY, for Defendant.

### MEMORANDUM–DECISION AND ORDER

GARY L. SHARPE, Chief Judge.

### I. *Introduction*

On November 1, 2011, defendant Deauntta Malloy filed a motion under 18 U.S.C. § 3582 seeking a reduction in his sentence following the retroactive application of the Fair Sentencing Act of 2010[1] ("FSA"), which, among other things, directed the United States Sentencing Commission ("Commission") to amend the United States Sentencing Guidelines ("Guidelines") ranges for certain federal crack cocaine offenders.[2] (*See* Dkt. No. 1125.) Although the parties agree that Malloy is eligible for a sentence reduction, they disagree on the extent of the reduction warranted. (*See generally* Dkt. Nos. 1125, 1135.) For the reasons that follow, Malloy's motion is granted and his term of imprisonment is reduced to sixty-four (64) months, which includes a twenty (20) month state custody credit.

### II. *Background*

According to the Presentence Investigation Report ("PSR"), which was adopted by the court at sentencing, Malloy was responsible "for at least 50 grams, but less than 150 grams" of crack cocaine in violation of 21 U.S.C. § 841.[3] (PSR ¶ 88.) Pursuant to the 2007 Guidelines, Malloy's base and adjusted offense level was thirty (30). (*See id.* ¶¶ 88, 94). After applying a three-level reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a), (b) (2007)[4], Malloy's total offense level was twenty-seven (27). (*See* PSR ¶¶ 95–96.) Because his criminal history placed him in category V, Malloy's advisory guideline range was 120 to 150 months. (*See id.* ¶ 103, 128.)

Before imposing sentence, the court had to resolve an issue arising out of Malloy's 2003 conviction in Albany County; the conviction was for "relevant conduct" and had increased Malloy's criminal history score by three (3) points. (*See id.* ¶ 102.) Despite being paroled at the time of his arrest in this case, the state, after learning of the arrest, placed a parole hold on Malloy and indefinitely suspended the violation

---

1. Pub.L. No. 111–220, § 8(2), 124 Stat. 2372, 2374 (2010).

2. Malloy's *pro se* motion, filed on November 9, 2011, is duplicative and is thus, denied as moot. (*See* Dkt. No. 1130.)

3. According to the notes to the Drug Quantity Table, cocaine base, as referenced in the table, means "crack." *See* U.S.S.G. § 2D1.1(c) n.(D) (2011).

4. Unless otherwise noted, citations to the U.S.S.G. refer to the 2011 edition of the Guidelines.

hearing. (*See id.*) After listening to the parties' arguments, neither of which disputed that a credit was due, the court stated "that some compensation ha[d] to be given under 5K2.23 for the sentence which you already served but which is undischarged." (Tr.[5] at 6:17–23, 11:9–12:11, 20:19–21.) Though it could not anticipate precisely how much additional time Malloy would serve, the court determined that a credit of twenty months was reasonable compensation. (*See id.* at 21:22–23.) As such, the court imposed a term of imprisonment of 100 months, which included a twenty-month custody credit. (*See* J. at 2, Dkt. No. 434.)

### III. *Standard of Review*

■ With limited exceptions, courts are generally precluded from modifying a final judgment. *See* 18 U.S.C. § 3582(b). However, section 3582(c)(2) creates one such exception in the event a defendant's term of imprisonment was "based on a sentencing range that has subsequently been lowered by the [Commission] pursuant to 28 U.S.C. § 994(*o*) and made retroactive pursuant to § 994(u)." *Dillon v. United States*, — U.S. ——, 130 S.Ct. 2683, 2690, 177 L.Ed.2d 271 (2010) (internal quotation marks omitted). Where this exception applies, "the court may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C. § ]3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). However, section 3582(c)(2) neither authorizes a "resentencing proceeding," *Dillon*, 130 S.Ct. at 2690, nor

permits the defendant to raise "arguments regarding procedural errors at his original, now-final sentencing," *United States v. Mock*, 612 F.3d 133, 135 (2d Cir.2010). Rather, section 3582(c)(2) provides for reduction of "an otherwise final sentence in circumstances specified by the Commission." *Dillon*, 130 S.Ct. at 2690.

■ Relevantly, the FSA directed the Commission to promulgate amendments in order "to achieve consistency" between the Guidelines "and [the] applicable law." FSA, Pub. L. No. 111–220, § 8(2), 124 Stat. 2372, 2374 (2010). To this end, the Commission reduced the offense levels for federal crack cocaine offenders, *see* U.S.S.G. § 1B1.10 cmt. n.4, and authorized a retroactive application thereof under 28 U.S.C. § 994(u), *see United States v. Almonte*, No. 08–CR–427, 2012 WL 273138, at *2 (E.D.N.Y. Jan. 30, 2012). Though this change empowers the court to entertain a motion under section 3582(c)(2), it by no means mandates a reduction in the defendant's sentence. *See id.* Instead, the court must conduct a two-step inquiry to determine: (1) whether the defendant is eligible for a "sentence modification and the extent of the reduction authorized," and if so, (2) whether it is "warranted" in light of the section 3553(a) factors. *Dillon*, 130 S.Ct. at 2691. Because the court, in considering a motion under section 3582(c)(2), is bound by the Commission's policy statements, *see Freeman v. United States*, — U.S. ——, 131 S.Ct. 2685, 2693, 180 L.Ed.2d 519 (2011), this inquiry begins with U.S.S.G. § 1B1.10,[6] the applicable policy statement.

(a) Authority.—
    (1) In General.—In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsec-

---

**5.** "Tr." refers to the transcript from Malloy's sentencing hearing held on May 22, 2008. (*See* Dkt. No. 1174.)

**6.** The revised version of U.S.S.G. § 1B1.10, which became effective on November 1, 2011, states, in relevant part:

According to U.S.S.G. § 1B1.10(b)(1), the court must first determine "the amended guideline range that would have been applicable to the defendant had the relevant amendment been in effect at the time of the initial sentencing." *Dillon*, 130 S.Ct. at 2691 (internal quotation marks omitted). "In making such determination," the court is prohibited from disturbing its previous "guideline application decisions," U.S.S.G. § 1B1.10(b)(1), and furthermore, from imposing a revised term of imprisonment "that is less than the minimum of the amended guideline range," *id.* § 1B1.10(b)(2)(A). *See United States v. Rivera*, 662 F.3d 166, 171 (2d Cir.2011) (holding that "the limitations on the degree of a sentence reduction under § 3582(c)(2) are mandatory"); *but see* U.S.S.G. § 1B1.10(b)(2)(B) (creating an exception to section 1B1.10(b)(2)(A) for "substantial assistance"). If the amended guideline range is lower than the original range, the court proceeds to step two; if it

is not, the inquiry ceases at step one. *See Dillon*, 130 S.Ct. at 2691. Thus, where appropriate, the court, at step two, should "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction . . . is warranted in whole or in part under the particular circumstances of the case." *Dillon*, 130 S.Ct. at 2692.

## IV. *Discussion*

The parties' disagreement regarding the appropriate sentence in this case is predicated on their misinterpretation of the court's decision at sentencing. Specifically, both parties believe that Malloy's criminal history category was reduced under U.S.S.G. § 4A1.3. (*See* Dkt. No. 1125 at 2–10; Dkt. No. 1135 at 5–18.) But, in actuality, the court applied a custody credit, and confirmed as much in an earlier decision when it stated: "The [twenty-month] 'back out' adjustment had nothing to do with the underlying 120– to 150–month scoring."

tion (c) below, the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2). . . .

(b) Determination of Reduction in Term of Imprisonment.—

(1) In General.—In determining whether, and to what extent, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement is warranted, the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (c) had been in effect at the time the defendant was sentenced. In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.

(2) Limitation and Prohibition on Extent of Reduction.—

(A) Limitation.—Except as provided in subdivision (B), the court shall not reduce

the defendant's term of imprisonment . . . to a term that is less than the minimum of the amended guideline range determined under subdivision (1) of this subsection.

(B) Exception for Substantial Assistance.—If the term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing pursuant to a government motion to reflect the defendant's substantial assistance to authorities, a reduction comparably less than the amended guideline range determined under subdivision (1) of this subsection may be appropriate.

(C) Prohibition.—In no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served.

(c) Covered Amendments.—Amendments covered by this policy statement are listed in Appendix C as follows: . . . 750 (parts A and C only).

U.S.S.G. § 1B1.10 (2011).

(Dkt. No. 1053 at 4 n. 3.).[7] Accordingly, the court's finding with respect to Malloy's criminal history category remains undisturbed. (*See* PSR ¶ 103.)

Setting aside this ambiguity, a larger issue remains as it is unclear whether the reapplication of the twenty-month custody credit to Malloy's amended guideline range is permissible. This question is further complicated by the lack of clarity in the transcript and Judgment, as neither definitively cites the authority for the twenty-month custody credit. Thus, clarification of the basis for the custody credit is essential. However, before doing so, it is contextually necessary to outline the undisputed facts under the *Dillon* inquiry. Thereafter, the court addresses the justification for, and reapplication of, the twenty-month custody credit to Malloy's amended sentence.

### A. *Malloy's Amended Guideline Range*

█ Here, Malloy is eligible for a four-point reduction in his base offense level. *See* U.S.S.G. § 1B1.10 cmt. n.4; *compare* U.S.S.G. § 2D1.1(c)(5) (2007), *with* U.S.S.G. § 2D1.1(c)(7) (2011). Because he pled to "at least 50 but less than 150 grams" of crack, (PSR ¶ 88), Malloy's amended base offense level is twenty-six (26). *See* U.S.S.G. § 2D1.1(c)(7). After reapplying the three-level reduction for acceptance of responsibility, Malloy's amended total offense level is twenty-three (23); his amended guideline range, given his criminal history category of V, is 84 to 105

months imprisonment. (*See* PSR ¶¶ 95–96, 103.) Moreover, neither party presented evidence that, when considered in light of, *inter alia*, the factors listed in 18 U.S.C. § 3553(a) and the applicable policy statements by the Commission, persuades the court to alter its previous decision to sentence Malloy at the low end of the Guidelines. It follows that Malloy's term of imprisonment—before reapplying the twenty-month custody credit—should be eighty-four (84) months.

### B. *The Custody Credit*

The ambiguity in the sentencing record, and the parties' misinterpretation thereof, makes clarification of the court's sentencing findings imperative. (*See* Dkt. No. 1125 at 2–10; Dkt. No. 1135 at 5–18.) In so doing, the court notes the Second Circuit has "consistently rejected the notion" that a district court cannot provide "post-sentencing clarification of the grounds for its sentence." *United States v. Swint*, 442 Fed.Appx. 614, 616 (2d Cir.2011). In fact, the Circuit recently held that a remand for clarification was appropriate where, as here, it is unclear what the original sentence was "based on." *United States v. McPherson*, 435 Fed.Appx. 17, 18 (2d Cir. 2011).

Here, the 2003 state conviction complicated Malloy's sentencing proceeding as it was unclear whether a New York state parole hold constituted an undischarged sentence under U.S.S.G. § 5G1.3(b). This

---

7. Admittedly, the court's statements during sentencing are inconsistent with respect to the authority for the twenty-month custody credit. Though it explicitly referenced U.S.S.G. § 5K2.23, the court also implicated U.S.S.G. § 5G1.3(b) when it characterized Malloy's 2003 conduct as "undischarged," and discussed the effect of subtracting criminal history points on the total sentence. (Tr. at 20:19–22:3.) Given that neither the PSR nor the original sentencing memoranda discuss this issue, it is understandable why the parties misinterpreted the court's decision. (*See generally* PSR, Dkt. Nos. 397, 406.) Nevertheless, Malloy's sentence reflected a custody credit, and not a criminal history departure. The statements regarding U.S.S.G. § 4A1.3 were only meant to provide the parties with insight into the court's reasoning in selecting twenty months. (*See* Tr. at 21:12–22:3.)

was so because: Malloy's 2003 conviction resulted in an indeterminate sentence of sixteen months to four years; he was paroled on December 1, 2005; on October 17, 2006, the New York State Division of Parole placed a violation hold on him "due to his arrest in the instant case"; and, at the time of sentencing, New York had not adjudicated the violation. (PSR ¶ 102.) Based on these facts, and the shared belief that the distinction between U.S.S.G. §§ 5G1.3(b) and 5K2.23 was inconsequential, (see Tr. at 12:8–11), the court never definitively stated the basis for the custody credit—that is, whether it applied U.S.S.G. § 5G1.3(b) or U.S.S.G. § 5K2.23.[8] However, this distinction may indeed be dispositive in light of the limitations on reductions under section 3582(c)(2). Therefore, the court first discusses the interplay of the relevant Guidelines' provisions, and then, provides alternative justifications for the credit in this case.

1. *Limitations under U.S.S.G. § 1B1.10(b)(2)* [9]

The essence of Malloy's argument is that U.S.S.G. § 1B1.10(b)(2) does not bar an amended sentence that is less than the minimum of the amended guideline range. (*See* Dkt. No. 1125 at 2–10.) Conversely, the government asserts that the Guidelines' prohibition on departures below the minimum of the amended range is binding,[10] and thus, the court cannot reduce Malloy's sentence below eighty-four (84)

months. (*See* Dkt. No. 1135 at 6–9.) Though the court generally agrees with the government's analysis, it concludes that, in this case, a credit under either U.S.S.G. §§ 5G1.3(b) or 5K2.23 is permissible.

As noted above, section 1B1.10(b)(2) states that in the absence of a motion under U.S.S.G. § 5K1.1, "the court shall not reduce the defendant's term of imprisonment ... to a term that is less than the minimum of the amended guideline range determined under [§ 1B1.10(b)(1) ]." Absent further clarification, this limitation could easily be misconstrued. But, the Commission provided a detailed application note to this provision, which states, in relevant part:

> [I]f the term of imprisonment imposed was within the guideline range ... the court may *reduce* the defendant's term of imprisonment to a term that is no less than the minimum term of imprisonment provided by the amended guideline range determined under subsection (b)(1). For example, in a case in which: (A) The guideline range applicable to the defendant at the time of sentencing was 70 to 87 months; (B) the term of imprisonment imposed was 70 months; and (C) the amended guideline range determined under subsection (b)(1) is 51 to 63 months, the court may *reduce* the defendant's term of imprisonment, but *shall not reduce* it to a term less than 51 months.

---

8. Though various portions of the record may suggest otherwise, (*see, e.g.,* Tr. at 6:4), Malloy's Judgment cites neither U.S.S.G. § 5G1.3(b) nor U.S.S.G. § 5K2.23 as the authority for the twenty-month custody credit. (*See* J. at 2, Dkt. No. 434); *see also* U.S.S.G. § 5G1.3(b) cmt. n.2(C) (stating that if the court credits the defendant for time already served, it "should note on the Judgment [, *inter alia,*] ... the applicable subsection (e.g., § 5G1.3(b))").

9. Notably, the parties' discussion on the limitations the Commission placed on the court is germane, and thus, will be discussed, albeit in the context of U.S.S.G. §§ 5G1.3(b) and 5K2.23, and not U.S.S.G. § 4A1.3. (*See* Dkt. No. 1125 at 2–10; Dkt. No. 1135 at 5–18.)

10. Clearly, the court's authority under 18 U.S.C. § 3582(c)(2) "is subject to significant constraints," and thus, need not be discussed. *Freeman,* 131 S.Ct. at 2693.

If the term of imprisonment imposed was outside the guideline range applicable to the defendant at the time of sentencing, the limitation in subsection (b)(2)(A) also applies. Thus, if the term of imprisonment imposed in the example provided above was not a sentence of 70 months (within the guidelines range) but instead was a sentence of 56 months (constituting a downward departure or variance), the court likewise may *reduce* the defendant's term of imprisonment, but *shall not reduce* it to a term less than 51 months.

U.S.S.G. § 1B1.10 cmt. n.3 (emphasis added). Thus, when considered in conjunction with its application note, section 1B1.10(b)(2) is unambiguous; it bars a reduction, whether by departure or variance, that imposes a term of imprisonment below the minimum of the amended guideline range. It does not, however, address a situation, such as this one, where the defendant was given credit for relevant conduct.

In distinguishing between departures and credits, the court agrees that reductions in a defendant's criminal history category under U.S.S.G. § 4A1.3 are impermissible under the Guidelines. Not only is section 4A1.3 entitled "Departures Based on Inadequacy of Criminal History Category," but it is also defined as such—specifically, an "assignment of a criminal history category other than the otherwise applicable criminal history category, in order to effect a sentence outside the applicable guideline range," U.S.S.G. § 1B1.1 cmt. n.1(E).[11]

■ On the contrary, section 5G1.3 deals with the "[i]mposition of a [s]entence," which is subject to "an [u]ndischarged term of [i]mprisonment." U.S.S.G. § 5G1.3. It applies where, *inter alia:* "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction ... and that was the basis for an increase in the offense level for the instant offense." *Id.* § 5G1.3(b). In such a case, the court must adjust the sentence to account for "any period of imprisonment already served on the undischarged term of imprisonment if [the defendant's federal sentence] will not be credited ... by the Bureau of Prisons." *Id.* § 5G1.3(b)(1). Simply put, section 5G1.3(b) adjusts only the amount of time the defendant will remain incarcerated in order to fulfill the term of imprisonment imposed.[12] It follows that section 1B1.10(b)(2) does not bar credits under section 5G1.3(b).[13]

---

**11.** In all other contexts, "departure" means "a sentence outside the applicable guideline range or of a sentence that is otherwise different from the guideline sentence." U.S.S.G. § 1B1.1 cmt. n.1(E).

**12.** This interpretation is consistent with the Commission's commentary on the "appropriate" application of section 5G1.3(b), which provides the following example:
The defendant is convicted of a federal offense charging the sale of 40 grams of cocaine. Under § 1B1.3, the defendant is held accountable for the sale of an additional 15 grams of cocaine, an offense for which the defendant has been convicted and sentenced in state court. The defendant received a nine-month sentence of imprisonment for the state offense and has served six months on that sentence at the time of sentencing on the instant federal offense. The guideline range applicable to the defendant is 12–18 months.... The court determines that a sentence of 13 months provides the appropriate total punishment. Because the defendant has already served six months on the related state charge as of the date of sentencing on the instant federal offense, a sentence of seven months, imposed to run concurrently with the three months remaining on the defendant's state sentence, achieves this result. U.S.S.G. § 5G1.3 cmt. n.2(D).

The availability of a credit under U.S.S.G. § 5K2.23, however, is not as clear; it falls within Part K on departures, yet addresses a situation where an adjustment under section 5G1.3 is unavailable because the term of imprisonment for relevant conduct has been discharged. Specifically, it states: "A downward departure may be appropriate if the defendant (1) has completed serving a term of imprisonment; and (2) subsection (b) of § 5G1.3 ... would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense." U.S.S.G. § 5K2.23. Strictly construed, a credit/departure [14] under section 5K2.23 is generally impermissible in the context of a section 3582(c)(2) motion if it results in a reduction of the defendant's sentence below the minimum of the amended guideline range. *See* U.S.S.G. § 1B1.10(b)(2). However, under the facts of this case, the limitation in section 1B1.10(b)(2) must give way to ensure Malloy's custody credit—to the extent it was/is justified under section 5K2.23—is reapplied.

## 2. *Application of Section 5G1.3(b)*

■ Section 5G1.3(b) provides the principal justification for the twenty-month custody credit in this case. However, its applicability hinges on an open question of law in this Circuit—namely, whether Malloy's sentence was discharged, where he was previously released on parole, but at the time of sentencing, was incarcerated pending adjudication of a parole violation.

To this end, the Second Circuit recently discussed a similar, yet distinguishable, scenario in *United States v. Hill,* 455 Fed. Appx. 121, No. 10–5039–cr, 2012 WL 181594 (2d Cir. Jan. 24, 2012). There, the defendant was incarcerated on a state charge at the time of his plea in federal court, but was released on parole prior .to sentencing. *See id.* at 123–24, at *2. In fact, at the time of sentencing, he was actually on post-release supervision as his two-year determinate term of imprisonment had expired. *See id.* Based on those facts, the district court refused to credit the defendant for his state term of imprisonment under section 5G1.3. *See id.*

**13.** The "common sense cannon of *noscitur a sociis[,]* which counsels that a word is given more precise content by the neighboring words with which it is associated," *United States v. Williams,* 553 U.S. 285, 294, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008), further compels such an interpretation of the Guidelines.

**14.** Notably, the Guidelines are somewhat contradictory in that U.S.S.G. § 5K2.23 uses the term "departure"—which implies that the sentence imposed was outside the Guidelines range—but it applies in situations where an adjustment, or credit, under U.S.S.G. § 5G1.3(b) is unavailable. Despite the language used in the provision, courts often— and in the court's opinion, correctly—cite U.S.S.G. § 5K2.23 departures as credits. *See, e.g., United States v. Carroll,* 436 Fed.Appx. 184, 186 (4th Cir.2011) (conflating the terms departure and credit); *United States v. Mer-* *rill,* 332 Fed.Appx. 791, 793 (3d Cir.2009) (same); *United States v. Falciglia,* 421 Fed. Appx. 146, 148 (3d Cir.2008) (same); *United States v. Carroll,* 691 F.Supp.2d 672, 673 (W.D.Va.2010) (same); *United States v. Lozano–Valdez,* Criminal Action No. H08–182, 2010 WL 1525667, at *3 (S.D.Tex. Apr. 15, 2010) (same); *United States v. Walker,* Criminal Action No. 6:06–111–DCR, 2010 WL 1434275, at *3 (E.D.Ky. Apr. 8, 2010) (same); *United States v. Wright,* No. 5:06–CR–315, 2009 WL 1911038, at *3 (N.D.N.Y. June 30, 2009) (same); *United States v. Givens,* No. 8:04CR478, 2006 WL 3390752, at *3 (D.Neb. Nov. 22, 2006) (same). Because the distinction between the terms "departure" and "credit" are of particular significance in a number of similarly situated cases, the district courts would benefit from further clarification of the correct application of U.S.S.G. § 5K2.23.

at 122–24, at *1–2. On appeal, the Circuit reiterated that "the relevant time for consideration of § 5G1.3 is the date of sentencing." *Id.* (citing *United States v. Labeille–Soto*, 163 F.3d 93, 99 (2d Cir.1998) ("If the defendant has completed his state prison term before the federal sentence is imposed, § 5G1.3 does not apply, and his federal prison term cannot be imposed concurrently.")). Accordingly, it affirmed the district court's holding that "a 'term of imprisonment' is 'discharged' within the meaning of § 5G1.3(b) when the prisoner is released from incarceration." *Hill*, 455 Fed.Appx. at 124, 2012 WL 181594, at *2.

Here, Malloy's 2003 conviction was unquestionably "relevant conduct" and resulted in an additional three (3) criminal history points. (*See* PSR ¶ 102; Tr. at 6:17–23, 20:1–2.) Furthermore, unlike the defendant in *Hill*, 455 Fed.Appx. at 122–24, 2012 WL 181594, at *1–2, Malloy was sentenced to an indeterminate sentence, and more importantly, was incarcerated at the time of sentencing.[15] (*See* PSR at 1, ¶ 102.) Although he was detained under both federal and state authority, Malloy's incarceration was due, in part, to a violation of his conditions of parole stemming from the 2003 conviction. (*See id.*) Moreover, he faced an additional period of imprisonment for that violation. *See* N.Y. Penal Law § 70.40(1)(a) ("Release on parole shall be in the discretion of the state board of parole, and such person shall continue service of his ... sentence ... while on parole....."). Thus, under New York law, Malloy's 2003 conviction was incomplete at sentencing, and an adjustment in the original sentence was required.[16] *See* U.S.S.G. § 5G1.3(b); *Labeille–Soto*, 163 F.3d at 99. It follows that Malloy's amended sentence must be adjusted as well.[17] *See Freeman*, 131 S.Ct. at 2693 ("All Guidelines decisions from the original sentencing remain in place, save the sentencing range that was altered by retroactive amendment.").

### 3. *Alternative Application of Section 5K2.23*

■ To the extent a reviewing court determines that section 5G1.3(b) is inapplicable, section 5K2.23 provides an alternative justification for the twenty-month custody credit. While it is technically a "departure," application of section 5K2.23 is appropriate here as it has no effect on Malloy's amended guideline range, and is being utilized solely to ensure Malloy receives the credit he was previously granted. *See* U.S.S.G. §§ 1B1.10(b)(2), 5K2.23. A contrary result would be, simply put, inequitable. As such, the unique facts of this case compel the grant of Malloy's motion and a reduction to sixty-four (64)

---

**15.** Notwithstanding this and other Circuit Courts' unwillingness to adopt the Eighth Circuit's holding in *United States v. French*, 46 F.3d 710, 717 (8th Cir.1995)—namely that under South Dakota law, "a defendant on parole was still serving an undischarged term of imprisonment for purposes of § 5G1.3(b)," *Hill*, 455 Fed.Appx. at 123, 2012 WL 181594, at *2 (collecting cases)—this case is factually distinguishable in that Malloy was incarcerated at the time of sentencing.

**16.** In *Hill*, the Circuit rejected the defendant's argument under N.Y. Penal Law § 70.40(1)(a) because it was inapplicable. 455 Fed.Appx. at 123–24, 2012 WL 181594, at *2. In so doing, the Circuit did not render an opinion on the application of New York law in determining whether a conviction for relevant conduct has been discharged. *See id.*

**17.** In applying a credit under section 5G1.3(b), the court still imposes an eighty-four (84) month (guideline) sentence on Malloy, and simply instructs the Bureau of Prisons that in administering that sentence, Malloy is to be credited for time he already served.

months, which includes a twenty-month custody credit.[18]

## V. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Malloy's *pro se* motion (Dkt. No. 1130) is **DENIED** as moot;  and it is further

**ORDERED** that Malloy's motion (Dkt. Nos. 1125) is **GRANTED** and his sentence is reduced to sixty-four (64) months, which includes a twenty (20) month custody credit;  and it is further

**ORDERED** that the Clerk shall issue an Amended Judgment in accordance with this Memorandum–Decision and Order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties.

**IT IS SO ORDERED.**

---

**18.** To this end, the Clerk is directed to issue an amended judgment, and notate, in accordance with the applicable rules, that the primary basis for the twenty (20) month custody credit is U.S.S.G. § 5G1.3(b) and the alternative basis, to the extent U.S.S.G. § 5G1.3(b) is deemed inapplicable, is U.S.S.G. § 5K2.23.